## JOSEPH KARESKE'S CASE.

Worcester.    September 22, 1924. — November 8, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Workmen's Compensation Act*, Procedure: agreement, decree of Superior Court; Law of the case.

After an injury received by an employee of a subscriber under the workmen's compensation act, the employee and the insurer executed a written agreement for compensation under G. L. c. 152, §§ 6, 7, 11, and twelve days later the employee returned to work. The agreement afterwards was approved by the Industrial Accident Board. Subsequently, there was a hearing before a single member of the Industrial Accident Board, the record of which disclosed that the questions before him were, whether the employee received an injury arising out of and in the course of his employment, notice, and incapacity; and evidence was presented upon all these questions. The single member found the issues in favor of the employee. The insurer claimed a review. The board stated that the question raised was " incapacity " and thereon affirmed and adopted the findings of the single member. They also stated that the insurer raised questions of notice and whether the injury arose out of and in the course of the employment, but ruled that, because of the agreement, the question, whether the injury arose out of and in the course of the employment, was not open and disregarded all evidence on this point. They also ruled and found that, having entered into the agreement which had been duly approved, the insurer was not at liberty to raise the question of notice. On certification to the Superior Court, a decree was entered that the injury arose out of and in the course of the employee's employment and that compensation should be paid as ordered by the Industrial Accident Board. The insurer appealed. No contention of fraud or mistake was made. *Held,* that

(1) So far as questions of fact were involved in the agreement of compromise, they were settled thereby and the facts of the injury, of liability of the insurer and the claimant's right to compensation had been fixed;

(2) The mere fact that no decree was made on the agreement for compromise was immaterial;

(3) The rulings by the Industrial Accident Board that the question open on the second proceeding was "incapacity" and that, having gone to an approved agreement, the insurer could no longer raise a question of notice of the accident, were correct;

(4) The question, whether the injury arose out of and in the course of the employee's employment, was not open after the agreement of compromise.

CERTIFICATION, filed in the Superior Court on January 24, 1924, under the provisions of the workmen's compensation act, of a decision of the Industrial Accident Board awarding compensation to the claimant for injuries received while in the employ of Worcester Gas Light Company.

Material facts shown by the record are described in the opinion. The case was heard by *Qua*, J., by whose order there was entered the decree described in the opinion. The insurer appealed.

The case was submitted on briefs.

*C. C. Milton & F. L. Riley*, for the insurer.

*E. A. D. Moss*, for the employee.

WAIT, J. On January 17, 1923, Joseph Kareske and "The Employers' Liability Assurance Corporation, Ltd., of London, Eng." executed a written agreement for compensation under the workmen's compensation act. It recited that the agreement was " in regard to compensation for the injury sustained by said employee while in the employ of Worcester Gas Light Company, Worcester " ; gave as the date of accident " Nov. 14, 1922 " ; the place " Steam " (meaning the boiler room) ; the nature " Hernia "; the cause of injury " Lifting an ash car "; and stated that there was no other ground or cause of claim. It stated as the terms of agreement: " To be paid $16.00 (which it is agreed is two-thirds ($^2/_3$) of my average weekly earnings per week during total disability which it is estimated will be . . . weeks, and to be paid $ . . . per week for . . . weeks for loss of . . . . It is hereby agreed that I have suffered no permanent loss of use of any member of my body as a result of the above accident, except as above stated." A report was filed with the board by the employer on December 6, 1922, which in

" Sec. C Injured Person " described the injured employee as J. Kareske, an ashman, a regular time worker in the steam department, with average weekly earnings of $29.75; and which in " Sec. D Cause " stated under " Describe fully how injury occurred:" "J. Kareske was found intoxicated at 2.30 a. m. He was in a tunnel underneath the Heine Boilers. Foreman Belcher told Mr. Olsen, engineer, to send him home. Mr. Olsen did so. J. Kareske was asleep when found. Few days later man's son came in to office and said his father was in hospital. When seen by Mr. Clark man had been operated on for double hernia. This report is made out just for a record." It further reported the man to be at the City Hospital and the probable duration of his disability to be unknown. A supplemental report was filed on January 29, 1923, stating that no incapacity resulted and that Kareske had returned to work on January 29, 1923, as laborer at $29.76 a week. A claim for compensation was filed with the board on January 4, 1923, and on February 23, 1923. There was no dispute that Kareske was out of work between November 14, 1922, and January 29, 1923, and was in the City Hospital from November 14 to December 22 where he was operated on for double hernia. By virtue of the agreement, compensation was paid by the insurer up to February 2, 1923. The agreement was approved by the board on February 15, 1923. After returning on January 29, Kareske continued to work for the gas company till June 16, 1923, when he was discharged. During this period he was not at his former work, and was paid $24 per week. He went to work again on August 6, in a Polish grocery store where he was paid in goods worth $18 a week, but received no money.

A hearing was had before a single member of the Industrial Accident Board on October 17, 1923. The record does not disclose how this hearing was brought about, but the report of the member sets out that the questions before him were (1) whether Kareske received an injury arising out of and in the course of his employment; (2) notice; and (3) incapacity. Evidence was presented upon all these points. The member found that Kareske was not intoxicated; that the

agreement stands; that there was an early recurrence of the hernia which caused inability to get work after June 16, 1923; that his wages then were $24 weekly; that reasonable efforts were made to obtain work and that from August 6, he was at work with an earning capacity of $18 per week. He found Kareske entitled to total disability payment of $16 a week from June 16 to August 6, 1923, and to payment for partial disability at $7.84 per week (two thirds of the difference between $29.76 and $18) from August 7 to the date of the hearing; this compensation for partial incapacity to continue in accordance with the act. He further found that the employer had knowledge of the injury.

The insurer claimed a review. The Industrial Accident Board stated the question raised as " incapacity," reciting however that the insurer raised questions of notice and whether the injury arose out of and in the course of the employment. The board affirmed and adopted the findings of the single member on the question of incapacity and found there was due the employee $136.64 to the date of hearing and thereafter a weekly compensation of $7.84 in accordance with the provisions of the statute. The board ruled that because of the agreement, the question whether the injury arose out of and in the course of the employment was not open, and it disregarded all evidence on this point. It found that the insurer had knowledge of the injury, making this finding as the reasonable inference from the fact of the execution of the agreement for compensation in which they agreed upon the time, place and cause of the injury. A majority of the board also ruled and found that, having entered into the agreement which had been duly approved, the insurer was not at liberty to raise the question of notice.

A decree was entered in the Superior Court that Kareske was an employee under the compensation act at the time of the injury; that the injury arose out of and in the course of his employment; and that compensation was due him to December 6, 1923, in the sum of $136.64 and thereafter a weekly compensation of $7.84 in accordance with the provisions of the statute. From this decree the insurer appeals.

The fundamental question presented by this appeal is the effect to be given to an agreement with regard to compensation, a memorandum of which has been filed with the department of industrial accidents and approved by it, but which has never been presented to the Superior Court for the entry of a decree. A majority of the Industrial Accident Board has ruled, in substance, that it stands like a decision of a single member which the parties have not sought to have reviewed; that it is a final determination of all issues involved in the establishment of the right to compensation; that, as in the case of every other determination whether or not embodied in a decree, the board has jurisdiction to modify the award of compensation as changes take place in the condition of the injured employee, G. L. c. 152, § 12, *Bartoni's Case*, 225 Mass. 349, at page 354, *Hurley's Case*, 235 Mass. 387. *Sonia's Case*, 234 Mass. 475, *Frizzi's Case*, 237 Mass. 460. *Emma's Case*, 242 Mass. 408, *Johnson's Case*, 242 Mass. 489; but the basic questions of liability under the law are not open for further consideration or different determination.

The workmen's compensation act, where an employee in the occupations to which it applies is injured in the course of his employment from a cause arising out of the employment, substitutes for the rights of action and grounds of liability given by earlier statutes and by the common law a system of weekly payments based upon the loss of wages resulting from the injury. *Devine's Case*, 236 Mass. 588, at pages 592 and 593. It enforces performance of the obligation which it establishes by a decree of the Superior Court, G. L. c. 152, § 11, and it prescribes the process by which a party can become entitled to a decree. G. L. c. 152, §§ 6–11. It contemplates two courses of procedure by which an enforceable obligation may be established. One, G. L. c. 152, §§ 6, 7, 11, by a voluntary accord between the parties upon the facts of liability, extent of incapacity and quantum of compensation; the other, G. L. c. 152, §§ 7–10 inclusive, by adversary proceedings in the course of which liability, incapacity and compensation are determined by a tribunal. The first results in a memorandum of the agreement filed

with the department of industrial accidents and approved by it; the second in a decision by a board member or by a reviewing board on a review of the decision of the member. Either forms the basis for a decree of the Superior Court. The act seeks a procedure " as simple and summary as may be." G. L. c. 152, § 5. It leaves to the parties to decide for themselves whether to proceed by amicable arrangement or by adversary proceedings. If the parties proceed by way of negotiation they must file a memorandum of the agreement reached, whether that agreement be oral or in writing, with the department of industrial accidents, and they must obtain the department's approval of the agreement. That approval can be given only when the terms of the agreement conform to the law. G. L. c. 152, § 6. Either party can then present the memorandum of agreement, so approved, to the Superior Court and ask that it be embodied in a decree. G. L. c. 152, § 11. The matter is ripe for decree upon the approval of the agreement by the department.

Where the parties begin by adversary proceedings a hearing is had before a single member of the board, who hears the evidence, decides facts and law and in a proper case makes an order in regard to compensation. If either party is dissatisfied he can ask a review of the single member's findings and rulings by a reviewing board. G. L. c. 152, §§ 8, 10. At the stage when a decision has been made by the single member which neither party cares to ask to have reviewed, or where, in case review has been obtained, a decision is made by the reviewing board, the adversary proceedings are ripe for a decree, and, as in the case of the nonadversary procedure, either party may present the papers to the Superior Court and ask for a decree.

The agreement, order or decision is not of itself a decree. *Johnson's Case*, 242 Mass. 489, 493. When the case has reached the stage that it is ripe for a decree, either by adversary or non-adversary proceedings, the question open for the Superior Court is whether the order, decision or agreement presented will support a decree consonant with the law. *Johnson's Case, supra.* The statute G. L. c. 152, §11,

says that the " court shall render a decree in accordance therewith " (i.e., with the agreement, order or decision) and this has been held to mean in accordance with the law applicable to the facts presented by the papers. *McNicol's Case*, 215 Mass. 497, 501. *Doherty's Case*, 222 Mass. 98. *Keohane's Case*, 232 Mass. 487. *Bell's Case*, 238 Mass. 46. *Chisholm's Case*, 238 Mass. 412. *Johnson's Case*, 242 Mass. 489. *Emma's Case*, 242 Mass. 408. *Gillard's Case*, 244 Mass. 47. The Superior Court therefore before entering a decree has the duty of framing the decree and of satisfying itself that the decree so framed complies with the law. It must hear the parties, but it cannot revise findings of fact for which there is any legal basis in the evidence and papers submitted. *Doherty's Case*, 222 Mass. 98. *Knight's Case*, 231 Mass. 142. *Weatherbee's Case*, 231 Mass. 297. *Sciola's Case*, 236 Mass. 407. Where the evidence is set out, it is bound by the legal effect of the papers presented. When all that appears before it is a memorandum of an agreement approved by the department, the court is justified in assuming that the jurisdictional facts have been made out; that a claim has been filed, and that notice has been given, or that the occurrences which by law excuse proof of seasonable claim and notice have been shown; that the injured person was an employee of an insured employer and that the injury was received in the course of the employment and arose out of it.

Proceedings under the act, however, do not necessarily end with the decree or the right to ask for a decree. The statute contemplated that changes may take place which will require revision of an order for compensation; and it authorizes such revision. G. L. c. 152, §§ 7, 12. In the proceedings thereon it is obvious that all matters concluded by the earlier proceedings between these parties, and not affected by the changed conditions which lead to revision, should not again be offered. *Hurley's Case*, 235 Mass. 387. *Bartoni's Case*, 225 Mass. 349.

In the case before us, we have two proceedings. One culminating in the agreement of January 17, 1923; the other resulting in this appeal: the first non-adversary; the second

adversary. The second involves a further claim and arises under G. L. c. 152, § 12. So far as the questions of fact involved in the first proceeding are essential to the determination of the second, they are settled. Injury, liability, and compensation had been fixed. There was nothing in regard to them which was open to controversy, on an application for a decree. The mere fact, that no decree was taken, we regard as immaterial. In the great majority of cases no decree is in fact entered. Nothing in the statute requires a party to take out a decree. It was here unnecessary. The insurer paid what was agreed; and it ought not now to be able to raise any question it then forbore to litigate.

The Industrial Accident Board was right in stating the question open on the second proceeding to be "incapacity"; and the ruling of the majority was correct in holding that, having gone to an approved agreement, the insurer could not now raise a question of notice of the accident.

We do not understand that the ruling of the majority of the board rested in any way on St. 1923, c. 125. By that statute failure to make a claim shall not bar proceedings if the insurer has executed an agreement in regard to compensation. The papers show that here claims were made in due season. The statute was not in force, however, when this accident occurred, and it is not applicable. *Devine's Case,* 236 Mass. 588. *Walkden's Case,* 237 Mass. 115. *Lapan's Case,* 237 Mass. 340. It is to be noted that the statute applies to a condition which does not occur in these proceedings, in that it gives to an agreement which has not been approved, effect to bar a defence of lack of claim. *Barry's Case,* 240 Mass. 409.

It follows, also, from what has been here stated that the question, whether the injury arose out of and in the course of Kareske's employment, is not now open. The earlier proceedings concluded that issue. *Hurley's Case, supra.* The ruling of the board was correct.

The board was clearly justified in finding that the insurer had knowledge of the injury by inference from the agreement and what it stated. We have before us in the papers the evidence reported by the single member which covers the

issues of knowledge of the injury by insurer and employer and agent, and sets out all the facts upon which the Superior Court would have proceeded had a decree been asked in the earlier phase of the case.

An examination satisfies us that there was evidence to justify a finding of all essential facts in favor of the employee in both proceedings. *Brown's Case*, 228 Mass. 31. No contention of fraud or mistake has been made. The decree ought not to be disturbed.

<div align="right">

*Decree affirmed.*