## WILLIAM P. O'REILLY'S (dependent's) CASE.

Suffolk.    November 15, 1926. — January 7, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Workmen's Compensation Act,* Compromise agreement: cancellation for mistake. *Mistake.*

A mutual mistake of parties to an agreement in regard to compensation entered into under G. L. c. 152, § 6, is one which is reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument, and sometimes of the agreement itself.

A mistake to warrant cancellation of an agreement of compensation entered into under G. L. c. 152, § 6, must not result from a want of due care and diligence; and it must be material to the transaction and not an incident or inducement to it.

A minor son who was an employee of a subscriber under the workmen's compensation act, G. L. c. 152, lived with his father and mother and a brother and sister, all members of the family working and contributing money to its support, and the mother acting as treasurer. The life of the employee was lost in circumstances warranting the awarding of

compensation under the provisions of the act. The father made with the insurer of the employer an agreement in regard to compensation under § 6 of the act, which was approved by the Industrial Accident Board and under which payments were made by the insurer for over three years and eight months. The father then died and the mother sought to have the agreement cancelled by reason of mutual mistake, and to have compensation awarded to her. A single member of the board, and the board on review, found that the mother was with the father when the agreement was signed in the insurer's office and that they had been told and understood that in six or seven months they could apply for a cash settlement; that the insurer made weekly payments to the father by checks, which he indorsed and the mother cashed and used toward the family expenses; and that the agreement was entered into by "mutual mistake of fact"; and orders were made cancelling the agreement and directing that compensation be paid to the mother. In the Superior Court a decree was entered accordingly, and the insurer appealed. The record on appeal showed no evidence either of misrepresentation as to the nature of the agreement which the father signed, or of fraud in procuring his signature, or that the insurer knew or had reason to know that the father or mother believed at the time the agreement was signed that its effect in law or in fact was in any way different from what it was in fact. *Held*, that the decree must be reversed and a decree entered for the insurer.

CERTIFICATION under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board affirming and adopting a decision by a single member finding that Mary O'Reilly, the mother of William P. O'Reilly, whose life was lost while he was employed by Beacon Oil Company, was a dependent of the employee and that an agreement in regard to compensation previously entered into between the insurer and the father of the employee as his dependent "was entered into by mutual mistake of fact"; and ordering that agreement cancelled and that compensation be paid to the mother as claimant.

In the Superior Court, the case was heard by *Morton*, J., by whose order a decree was entered ordering that compensation be paid to the mother. The insurer appealed.

*W. I. Badger*, for the insurer.

*A. F. Bickford*, for the claimant.

PIERCE, J. The deceased employee, a boy nineteen years of age, made his home with his father, mother, a brother and a sister. On October 8, 1920, he received injuries that proved fatal while in the employment of the Beacon Oil Company,

a subscriber under the workmen's compensation act. It is not disputed that his injuries arose out of and in the course of his employment. An agreement to pay partial compensation to the father, William P. O'Reilly, Sr., in the amount of $6.50 a week was entered into between the father and the Travelers Insurance Company. This agreement was filed on December 9, 1920, with the Industrial Accident Board, and was approved by it on December 30, 1920. In accordance with the terms of the agreement, the insurer paid the father $6.50 a week up to August 11, 1924, when the father died, the total amount paid being $1,364.71.

Thereafter the mother filed a claim for the payment of dependency compensation. At the hearings before the single member, evidence was introduced which warranted a finding that the father's earnings alone were not enough to support his wife and the other members of his family; that all members worked and contributed money, which was given the mother and put in the common fund to pay the household expenses; that it was necessary for the mother to work to help maintain the house; that "When William went to work for the Barrett Manufacturing Company she gave up her work; she gave it up a little before that because she was not able to continue on with it"; that, as the single member found, "When William began to work [at the Barrett Manufacturing Company] he gave her his pay"; that "The money she got from him went toward the house and she used it for anything she saw fit"; that "The income of her husband was not sufficient at that time to carry on the household without assistance from the outside"; that "With this income that she received from her son in the way of wages she felt free to spend as she wanted to; if she had anything left over the bills were paid"; that "The bills to which she refers may have been bills for her own personal clothing, as well as food for the table"; that "She put it . . . with the money given her by the rest of the family." Warranted by the evidence, the single member further found that she spent on herself during the course of the year $159 for clothing and miscellaneous articles; that she "was the treasurer of the family and apparently, with the consent of

her husband, received the contributions from its members and with his coöperation, paid all family bills." It appeared in the evidence of the mother that after their son died her husband received a check from the insurance company every two weeks and that went with the rest of the money toward the home. Her husband would sign the check and witness would cash it.

The single member found that the compensation agreement was entered into by mutual mistake of fact and therefore ordered it cancelled. The reported facts regarding the execution of the agreement, disclosed in the testimony of the mother alone, are as follows: She was with her husband when he signed the agreement for compensation at the Travelers Insurance Company's office. They understood that in six or seven months they could apply for a cash settlement; they were so told at the time the paper was signed. They made no further application for a cash settlement within six or seven months or thereafter from the signing of the agreement. The insurer, in performance of the agreement, sent checks every two weeks to the father from December 30, 1920, until August 11, 1924. The husband signed the checks; the mother cashed them as often as received, and participated in the benefits. There is no evidence of misrepresentation of the nature of the agreement which the father signed, nor of fraud in procuring his signature, and there is no evidence reported that the insurer knew or had reason to know that the father or mother believed at the time the agreement was signed that its effect in law or in fact was in any way different than it was in fact.

Upon the reported evidence the finding of the single member that the agreement was entered into by "mutual mistake of fact" was unwarranted, as was the order that it be cancelled. It is well settled that a mutual mistake is one which is reciprocal and common to both parties, where each alike labors under the same misconception in respect to the terms of the written instrument, and sometimes of the agreement itself. *Page* v. *Higgins*, 150 Mass. 27, 31, 32; *Dolvin* v. *American Harrow Co.* 125 Ga. 699. It is equally well settled that, where a person capable of reading and un-

derstanding a written instrument fails to acquaint himself with its contents before affixing his signature thereto and such failure is due to his own negligence, his ignorance of the force and effect of the instrument is not available as a basis for equitable relief by way of cancellation. *Bibber* v. *Carville,* 101 Maine, 59. The mistake to warrant cancellation must not result from a want of due care and diligence; and it must be material to the transaction and not an incident or inducement to it. *Bibber* v. *Carville, supra.* 4 R. C. L. 507, and cases cited.

The voluntary agreement or accord arrived at by the parties, under G. L. c. 152, §§ 7–10, forms the basis for a decree in the Superior Court, although not of itself a decree. *Johnson's Case,* 242 Mass. 489, 493. *Kareske's Case,* 250 Mass. 220. "Any party in interest may present . . . a memorandum of agreement approved by the department . . . to the Superior Court . . . whereupon said court shall render a decree in accordance therewith . . . . Such decree shall have the same effect . . . as though rendered in a suit duly heard and determined by said court." G. L. c. 152, § 11. After an agreement has been approved by the department, and acted upon, any party in interest may and should present that agreement to the Superior Court for a decree of reformation or cancellation, if such a decree would be justified on the facts had the agreement been made in a suit heard and determined in that court. *McCracken's Case,* 251 Mass. 347.

It is plain the father could not, on the reported facts, have had a reformation or cancellation of the approved agreement, on the ground that it was entered into by "mutual mistake of fact." The situation and the right of the mother are no stronger. She was present when the agreement was signed, and consulted with their attorney. She cashed the checks for more than three years, and during that time participated in the benefits which came from the performance of the agreement by the insurer. It follows that the decree should be reversed, and a decree entered for the insurer.

*Decree accordingly.*