RALPH H. PERKINS'S CASE.

Suffolk.    October 8, 1931. — February 29, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act,* Agreement as to compensation, Review
  by Industrial Accident Board, Overpayment by insurer, Decree.
  *Mistake. Jurisdiction. Superior Court.*

When an agreement as to compensation has been made by an injured
  employee and an insurer and approved by the Industrial Accident
  Board under G. L. c. 152, § 6, further inquiry into the merits of the
  original controversy, both as to liability and compensation for the
  period covered, is at an end in the absence of fraud or mistake.
If either the employee or the insurer afterwards questions the validity
  of an agreement thus approved, contending that it is tainted by
  fraud or mistake, the proper tribunal for the investigation and settle-
  ment of that controversy is the Superior Court: when such an agree-
  ment has been approved by the Industrial Accident Board and has
  been acted upon, it has passed beyond the control of the board so far
  as concerns inquiry as to its validity.
An injured employee and an insurer made an agreement as to compensa-
  tion under G. L. c. 152, § 6, which was approved by the Industrial
  Accident Board, and which stated the employee's average weekly
  wages to be $42.   Later, the employee desiring to secure more com-
  pensation for partial incapacity, there was a hearing under § 12 of
  the statute by a single member of the board, who found that the
  average weekly wages of the employee before his injury were $64,
  that the smaller sum was inserted in the compromise agreement "by
  mutual mistake of the parties thereto"; and that there was no ques-
  tion of good faith or honesty on the part of the parties; but he ruled
  that it was not within the jurisdiction of the Industrial Accident Board
  to correct the error.   The board on review reversed the ruling of the
  single member as to jurisdiction, and revised the agreement.   Upon
  certification to the Superior Court under § 11 of the statute, no evidence
  of mistake by the insurer appeared, and the court ruled in substance
  that, there being no mutual mistake, the agreement remained binding
  as to the amount of the average weekly wages.   The employee appealed.
  *Held,* that
    (1) Although the Industrial Accident Board improperly assumed
  jurisdiction, in view of the fact that all parties participated without
  objection in such hearings, the Superior Court had jurisdiction to
  deal with the subject matter to the extent conferred by G. L. c. 152,
  § 11: the case might be treated as a presentation to the Superior
  Court upon agreed evidence or an agreed statement of facts in equity;

(2) There being evidence to warrant a finding of mistake only on the part of the employee, and none of mistake on the part of the insurer, and there being no question of fraud, there was no ground for setting aside the agreement of compromise as to the amount of average weekly wages;

(3) It appearing that later the employee had been paid compensation for partial incapacity on a basis of average weekly wages greater in amount than that stated in the compromise agreement, the Superior Court properly ordered the employee to return to the insurer the amount so overpaid.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board described in the opinion.

Proceedings in the Superior Court before *Greenhalge*, J., and a final decree entered by his order are described in the opinion. The employee appealed.

*H. D. Hunt*, for the claimant.

*J. T. Connolly*, (*W. R. Donovan* with him,) for the insurer.

RUGG, C.J. This is an appeal from a decree entered in the Superior Court. The facts material to the grounds of this judgment are these: The employee received on December 18, 1928, an injury arising out of and in the course of his employment by a subscriber. He entered into an agreement in writing with the insurer which was duly approved by the Industrial Accident Board, wherein it was stated that his average weekly wage was $42 and the compensation due per week $18. He was paid that compensation weekly up to November 15, 1929, when it was reduced to $4.67 per week based on his earnings. He desired to secure a greater partial rate of compensation and alleged that his average weekly wages for a year previous to his injury were in excess of $42. He actually returned to work on September 12, 1929, and the insurer contended that there had been an overpayment. The issues tried before the board member in April, 1930, were (1) whether as matter of law the employee was precluded from showing that the agreement for compensation was incorrect and (2) what his actual earnings were after his return to work. The finding on the latter point is not disputed and was that his average weekly wages subsequent to September

12, 1929, were $46.48. The controversy relates to the first issue. The witnesses before the board member were the employee and the bookkeeper of the employer. The employee testified that while he was in the hospital a representative of the insurer asked him some questions and wrote the answers on paper and asked him to sign them in the presence of his wife and a doctor. What that paper was does not clearly appear but seemingly it was a statement descriptive of the way in which the accident happened. He testified further that he received a letter dated January 4, 1929, from the insurer, of this tenor: "We enclose herewith check covering compensation due to date. Please sign the enclosed agreement, have your signature witnessed and return to us at once." That was the agreement for compensation. No representative of the insurer was present when the employee signed it. A neighbor of the employee witnessed his signature to that agreement. That agreement was sent to the employee through the mail and was returned by him to the insurer in the same way, and then he received compensation weekly.

The employee testified that some representative of the insurer prepared the agreement and that the statement therein contained, to the effect that his weekly wages were $42, was correct; that he received in addition a commission which was drawn when he made sales; and that he did not know why his commission account did not appear on the agreement. The bookkeeper of the employer testified from the record of wages and commissions paid to the employee in the period from January 1 to December 22, 1928, nine days less than a year, that the employee's earnings amounted to $3,351.74; that his signature was attached to the accident report sent to the Industrial Accident Board; and that he was unable to say whether at any time prior to December, 1929, he advised the insurer that the employee earned more than $42 a week.

The decision of the board member was that the report of the accident stated that the wages of the employee were $42 a week; that in a statement dated December 27, 1928, signed by the employee, appeared the following, "My

weekly wage is forty-two dollars"; that in the agreement in regard to compensation signed by the employee in January, 1929, there was the same statement in respect to the weekly wage; and that notwithstanding these statements the employee in fact was paid an average weekly wage of $64.46. The board member states the question to be "whether the employee by signing an agreement in regard to compensation stating clearly that his average weekly wages were $42 and by his other acts and statements in the period not far from the date of the injury is precluded at this time from establishing a different average weekly wage." As bearing on this point the finding is: "No question of good faith or honesty upon the part of any of the parties arises. In making whatever statements were made the parties in declaring that $42 was the average weekly wage undoubtedly spoke in a colloquial way, — simply not considering the amounts which the employee received as commission. Upon all the evidence I find . . . that by the terms of the agreement for compensation which was approved by the Department of Industrial Accidents his average weekly wages previous to the injury were established at $42 weekly; . . . that the sum of $42 weekly was inserted in the agreement for compensation last referred to by mutual mistake of the parties thereto, and that the actual average weekly wages of the employee for the year previous to his injury, within the meaning of the Act and as construed by law, were $64.46." He thereupon ruled as matter of law that it was not within the jurisdiction of the board to correct an error made in an agreement for compensation, and that such correction must be made in the Superior Court. The conclusion of his decision is as follows: "Under the findings and rulings as made above I am obliged to find further that the employee since September 12, 1929, has been receiving average weekly wages greater in amount than it has been decided he received at the time of the injury. I therefore find that no further compensation is at this time due the employee; but expressly reserve his rights for a correction of the amount of compensation due from and after September 12, 1929."

The reviewing board affirmed and adopted the findings of

fact of the board member, reversed his ruling of law, and ruled that "Where mutual mistake of fact has been shown as to that part of the agreement in regard to compensation which states the employee's average weekly wages to be $42, it is within the jurisdiction of the Board to revise the agreement in that respect and to find, in accordance with the evidence, that the employee's average weekly wages before his injury were $64.46. The Reviewing Board do so find." In the Superior Court the trial judge found: "Upon the facts found and reported by the Industrial Accident Board I am unable to reach the conclusion that the statement of the employee's average weekly wage as $42 in the agreement in regard to compensation entered into by him with the insurer was due to a mutual mistake of fact and find that there was no mutual mistake of fact in respect of the figure so adopted, and that the mistake, if there was a mistake, was solely on the part of the employee." A decree was therefore entered reciting, in substance, this finding, and declaring that since there was no mutual mistake of fact by the parties to the agreement for compensation the parties were bound by the average weekly wage stated therein, and further declaring "That the employee was bound by the average weekly wage of $42 stated in the agreement for compensation approved by the board and having returned to work September 12, 1929, and having earned an average weekly wage of $46.48 since that date no subsequent payments should have been made and the employee is hereby ordered to refund to the insurer the full amount of the compensation paid between September 12, 1929, and November 15, 1929, at the rate of $18 per week or $164.57."

The procedure thus outlined was taken without objection by either the employee or the insurer. So far as such procedure was taken before the board member or the Industrial Accident Board, it was irregular. It is provided by G. L. c. 152, § 6, that when the employee and the insurer have reached an agreement as to compensation "a memorandum thereof shall be filed with the department, and, if approved by it, the memorandum shall for all purposes be enforceable under section eleven." The provisions of this latter section

relate to the supervisory and enforcing powers of the Superior Court. The provisions of § 6 mean that, when the agreement has been made and approved as there specified, further inquiry into the merits of the original controversy, both as to liability and compensation for the period covered, is at an end in the absence of fraud or mistake. Changed conditions may require later a revision of compensation; but all matters concluded by the agreement as thus approved and not affected by such changed conditions stand as settled and not open to revision. G. L. c. 152, § 11. *Kareske's Case,* 250 Mass. 220, 226.

If it is contended by either the employee or the insurer that the validity of an agreement thus approved is tainted by fraud or mistake, the proper tribunal for the investigation and settlement of that controversy is the Superior Court. That is the plain implication of the provision already quoted from § 6 to the effect that the memorandum of agreement when approved shall for all purposes be enforceable under § 11. That statutory language imports that whether the memorandum ought to be enforced under the terms of the statute and general principles of equity is for the Superior Court to determine. The other sections of G. L. c. 152 make no provision for inquiry of that nature by the Industrial Accident Board. That board is a purely administrative tribunal created to administer the workmen's compensation act with the aid of the Superior Court; it possesses only the powers conferred upon it by express grant or necessary implication. *Levangie's Case,* 228 Mass. 213, 216, 217. When an instrument of the finality of a memorandum of agreement has been approved by the board and has been acted upon, it has passed beyond the control of the board so far as concerns inquiry as to its validity. Accident and mistake touching such a matter are proper subjects for investigation under general principles of equity, which in the main govern proceedings in court under the workmen's compensation act. *Gould's Case,* 215 Mass. 480, 482, 483. This is in accord with the statement in *O'Reilly's Case,* 258 Mass. 205, 209: "After an agreement has been approved by the department, and

acted upon, any party in interest may and should present that agreement to the Superior Court for a decree of reformation or cancellation, if such a decree would be justified on the facts had the agreement been made in a suit heard and determined in that court."

In the case at bar, however, all parties participated in the hearing before the board member. That hearing was held under G. L. c. 152, § 12, because the employee had so far recovered from his injuries that he was able to return to work and it became necessary by reason of these changed conditions to revise the compensation as fixed by the agreement embodied in the memorandum and approved by the board. The amount of such revised compensation depended in some degree upon the employee's average weekly wage at the time of his injury. Although that average weekly wage was established by the agreement, the employee offered evidence to show that the average weekly wage thus established was not true in fact. There was no objection or exception to this evidence by the insurer. The hearing before the reviewing board proceeded also without objection or exception. *Korobchuk's Case,* 277 Mass. 534, 537. The evidence was fully reported. In these circumstances there was no objection to the hearing in the Superior Court on the record as thus presented. The Superior Court had jurisdiction to deal with the subject matter to the extent conferred by G. L. c. 152, § 11. In substance and effect the parties without objection proceeded to hearings before the board member and the reviewing board, the evidence was reported, and the questions at issue are plainly set forth. Since the procedure under the workmen's compensation act is designed to be simple, we are of opinion that this may be treated as the presentation to the court of the case upon agreed evidence or agreed statement of facts in equity, and that the court had jurisdiction to deal with the case as thus presented. *Donahoe* v. *Turner,* 204 Mass. 274, 275. *Dzuris* v. *Pierce,* 216 Mass. 132, 135. *Glass* v. *Glass,* 260 Mass. 562, 563. Compare *Frati* v. *Jannini,* 226 Mass. 430, 431. See G. L. c. 231, § 124.

The general principle as to the reformation of written

instruments on the ground of mistake is that such relief can be afforded only when the formal contract does not set out the agreement actually made between the parties by reason of some error or misapprehension common to all the parties. The mistake must relate to the same matter and be mutual. Mistake of one party only is no ground for relief; it must be shared by all the parties. The proof of such mistake must be clear and decisive. *Coolidge* v. *Loring*, 235 Mass. 220, 224. *Barrell* v. *Britton*, 252 Mass. 504, 508. *Martin* v. *Jablonski*, 253 Mass. 451, 453.

The evidence set forth in the record falls short of showing that the agreement between the employee and the insurer was made under a mutual mistake. Doubtless there was oversight and forgetfulness on the part of the employee in failing to remember the element of commissions as a factor in his earnings in time to cause it to be inserted in the agreement. Whether that amounted in law to a mistake need not be determined. There is nothing to indicate any mistake on the part of the insurer. So far as appears, no representative of the insurer made any mistake or entered into any agreement different from that embodied in the instrument as written. The trial judge was right in ruling that there was no mutual mistake of fact in the execution of the agreement.

Since there was no mutual mistake in the agreement approved by the Industrial Accident Board, that agreement must stand and further inquiry as to the average weekly wage of the employee at the time of his injury is precluded. *McCracken's Case*, 251 Mass. 347, 350, 351.

The average weekly wage of the employee since his return to work in September, 1929, exceeded the average weekly wage at the time of his injury, as stated in the written memorandum of agreement approved by the department. Therefore, he was entitled to no payments since his return to work. He was in truth paid compensation by the insurer from his return to work until November 15, 1929, at the rate of $18 per week. The insurer contended that there had been this overpayment at the hearing before the board member, as stated in his report. It is mani-

fest from what has already been decided that this was an overpayment. It is stated in the report of the board member that on November 15, 1929, the weekly payments were reduced from $18 "to $4.67 a week, based on his earning capacity." The factors which entered into the calculation of $4.67 as a weekly payment are not given in the record. No question appears to have been raised concerning that matter and none is here presented. That does not affect the question before the trial judge. Since it was apparent that the employee had received the overpayment already stated, and since the insurer had seasonably raised that question, manifest justice required that the overpayment ought to be returned. The third paragraph of the decree was therefore right. It was the duty of the trial judge to enter the kind of decree required as matter of law on the record presented. *McNicol's Case,* 215 Mass. 497, 501, 502.

*Decree affirmed.*