ARTHUR VIRTA'S CASE.

Suffolk. March 14, 1933. — September 13, 1934.

Present: RUGG, C.J., WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Workmen's Compensation Act,* Decision by Industrial Accident Board, Proceedings in Superior Court, Amount of compensation, Incapacity.

Following an injury to an employee, an agreement for compensation, fixing his average weekly wages at $38, was entered into and approved by the Industrial Accident Board under the workmen's compensation act, and compensation was paid thereunder until the employee returned to work. Later, in June, 1930, he became partially incapacitated as a result of such injury, and the board in March, 1931, made a decision awarding him further compensation based on average weekly wages of $34.45, which was paid up to April, 1931. That decision was not then certified to the Superior Court. In August, 1932, the board made a further decision ordering the payment of additional compensation from March, 1931, to April, 1931, based on average weekly wages of $38, and compensation from April, 1931, based thereon. The decision of August, 1932, was certified to the Superior Court, the papers presented including copies of the compensation agreement and of the decision of March, 1931. A decree was entered ordering compensation to be paid in accordance with the board's decision of August, 1932, and also ordering payment of additional compensation for the period from June, 1930, to March, 1931, on the basis of average weekly wages of $38. Upon appeal by the insurer, it was *held,* that

(1) The compensation agreement, fixing the average weekly wages at $38, was conclusive; and the decision of the Industrial Accident Board of March, 1931, based on average weekly wages of $34.45, was erroneous;

(2) The mere circumstance, that the erroneous decision of March, 1931, was not certified to the Superior Court within ten days after notice of its filing under § 11 of the workmen's compensation act, did not preclude the Superior Court, upon the certification made in August, 1932, from entering such decree as was proper on the facts shown by the record before it, irrespective of the erroneous decision;

(3) The decree entered was proper and must be affirmed.

The provisions of § 11 of the workmen's compensation act do not mean that the Superior Court shall have no jurisdiction to receive and act upon a decision of the Industrial Accident Board which is not certified to it "within ten days after the notice of the filing thereof by said board," but merely mean that there shall be no right of appeal from a decree of the Superior Court based on such a decision.

On all the evidence before the Industrial Accident Board in proceedings under the workmen's compensation act, including testimony by the employee, who was a laborer, and by his physician, a finding was warranted that the employee, who received an injury to his knee in September, 1929, had a diminished earning capacity attributable to his injury and not to business conditions, and was partially incapacitated, during a period beginning in April, 1931.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board.

Proceedings before the board and a decree entered by order of *J. J. Burns*, J., are described in the opinion. The insurer appealed.

*A. B. Peterson*, for the insurer.

*J. G. Annala*, for the claimant, submitted a brief.

FIELD, J. This is a workmen's compensation case. G. L. (Ter. Ed.) c. 152. The insurer appealed from a decree whereby the employee's average weekly wages were established at $38 and he was awarded a back payment from June 26, 1930, to April 10, 1931, amounting to $97.51, and compensation after April 10, 1931, at the rate of $8.67 a week, amounting from April 10, 1931, to August 17, 1932, to $615.57, further payment from August 17, 1932, to be subject to the provisions of the act.

. The course of proceedings leading to the decree appealed from was as follows: The employee received an injury to his knee on September 10, 1929. By an agreement approved by the board on February 13, 1930, his average weekly wages were fixed at $38 and he was awarded compensation at the rate of $18 a week. Payment of such compensation was made up to May 4, 1930, when it was discontinued in accordance with an agreement dated April 30, 1930. The employee returned to work following the discontinuance of compensation and worked until June 26, 1930. A single member, by a decision filed December 24, 1930, found that "following the time the employee stopped work on June 26, 1930, he was partially incapacitated as a result of his injury; . . . from that date he had an earning capacity of $20.95 a week and . . . his average

weekly wages being $34.45 he is entitled to partial com-
pensation at the rate of two thirds of the difference, or at
the rate of $9 a week." The reviewing board on March
4, 1931, denied the employee's motion for a rehearing and
adopted the findings and decision of the single member
and found that the employee was entitled to partial com-
pensation at the rate of $9 a week, dating from December
24, 1930, and continuing subject to the provisions of the
act. This decision was not "presented to the [Superior]
court within ten days after the notice of the filing thereof
by said board." See G. L. (Ter. Ed.) c. 152, § 11. Partial
compensation was discontinued on April 10, 1931. There-
after the employee requested additional compensation and
the single member found that "from June 26, 1930, up to
April 10, 1931, based on an earning capacity of $20.95 and
an average weekly wage of $38, there is due the employee
the additional amount of $97.51," and found further that
from April 10, 1931, the employee has been partially in-
capacitated and awarded partial compensation to him at
the rate of $8.67 a week based on a weekly earning capacity
of $25, continuing subject to the provisions of the act.
Upon claim for review the board on August 10, 1932,
affirmed and adopted the decision that the employee's
average weekly wage was established at $38 and awarded
compensation to him at the rate of $8.67 a week, dating
from April 10, 1931, and continuing subject to the provi-
sions of the act, and found that from March 4, 1931, to
April 10, 1931, compensation should have been paid by
the insurer at the rate of $11.36, instead of $9 a week,
and ordered the insurer to pay the full amount aggregating
$12.48. On August 17, 1932, this decision was presented
to the Superior Court. The certified copies of papers in
connection with such decision included a copy of the deci-
sion of March 4, 1931.

The insurer contends that the decree of the Superior
Court was wrong in awarding additional compensation for
the period from June 26, 1930, to March 4, 1931, because
that matter was not open, and in awarding compensation
for the period after April 10, 1931, because the evidence

did not warrant a finding that the employee was incapacitated after that date. It is not contended by the insurer that there was error in awarding additional compensation for the period from March 4, 1931, to April 10, 1931, or in establishing the employee's average weekly wage at $38 as a basis for awarding compensation after April 10, 1931.

1. There was no error in the decree so far as it awarded additional compensation for the period from June 26, 1930, to March 4, 1931.

It was the duty of the Superior Court to "render a decree in accordance" with the decision of the reviewing board presented to it. G. L. (Ter. Ed.) c. 152, § 11. "This means such a decree as the law requires upon the facts found by the board." *McNicol's Case*, 215 Mass. 497, 502. See also *Brown's Case*, 228 Mass. 31, 38; *Sciola's Case*, 236 Mass. 407, 412; *Chisholm's Case*, 238 Mass. 412, 417; *Kareske's Case*, 250 Mass. 220, 226. The facts found by the board included the fact of an agreement between the parties, approved by the board on February 13, 1930, which had been acted upon, fixing the employee's average weekly wage at $38. Such an agreement is enforceable by the Superior Court under G. L. (Ter. Ed.) c. 152, § 11; see § 6. "When an instrument of the finality of a memorandum of agreement has been approved by the board and has been acted upon, it has passed beyond the control of the board so far as concerns inquiry as to its validity." *Perkins's Case*, 278 Mass. 294, 299. Consequently, apart from the decision of the board of March 4, 1931, hereinafter considered, the agreement fixing the employee's average weekly wage at $38 was binding upon the board, and was conclusive as to that fact for the purpose of the entry of a decree by the Superior Court, unless the agreement was reformed or cancelled by the Superior Court. *Perkins's Case*, 278 Mass. 294. See also *McCracken's Case*, 251 Mass. 347, 350–351; *O'Reilly's Case*, 258 Mass. 205, 209; *MacKinnon's Case*, 286 Mass. 37, 38. The record, however, discloses no ground on which the Superior Court would have been justified in reforming or cancelling the agreement.

But, though the agreement was binding upon the board, the board made the decision of March 4, 1931, inconsistent therewith, and this decision was not presented to the Superior Court "within ten days after the notice of the filing thereof by said board." See G. L. (Ter. Ed.) c. 152, § 11. Thus the question arises whether, by reason of the erroneous decision of the board of March 4, 1931, the Superior Court was precluded from entering the decree, which, apart from this decision, was required by the facts found. Doubtless this decision, unless revised in some proper manner, was "a final decision amounting to a judgment." *Casieri's Case*, 286 Mass. 50, 55. But this decision could have been presented to the Superior Court after the expiration of the ten-day period. And, in spite of delay in presenting the decision to the court, it would have been the duty of the court to enter a decree "in. accordance with the law applicable to the facts presented by the papers." *Kareske's Case*, 250 Mass. 220, 226. As was said in *Sciola's Case*, 236 Mass. 407, 411–412, "the filing of the certified copy of the decision within ten days is not a condition to the acquirement of jurisdiction, but . . . the limitation of time relates only to cases where the parties may desire to appeal generally from the decree of the Superior Court. . . . there is no limitation as to the time of presentation, but merely the express provision that there shall be no appeal if the required papers are not presented within ten days. In such case it is the duty of the Superior Court to enforce the award of the board, unless there is legal reason to the contrary." It is apparent, therefore, that, if the decision of the board of March 4, 1931, had been presented to the court, the proper decree thereon would have been a decree based upon an average weekly wage of $38 — rather than $34.45 — conclusively fixed by the agreement approved by the board. Furthermore the certified copies of papers which were presented to the Superior Court in connection with the decision of the board of August 10, 1932, included the memorandum of agreement of February 13, 1930, approved by the board, and the decision of the board of March 4,. 1931. And procedure under the workmen's com-

pensation law is designed to be simple rather than technical. *Perkins's Case*, 278 Mass. 294, 300. We are of opinion therefore that the presentation to the Superior Court of certified copies of the decision of the board of August 10, 1932, "and all papers in connection therewith," (G. L. [Ter. Ed.] c. 152, § 11,) including the agreement and the decision of March 4, 1931, gave to the Superior Court jurisdiction to enter a decree in accordance with the law applicable to the facts presented by these papers, uncontrolled by the erroneous decision of the board of March 4, 1931, which the court would have had the duty to revise so that it would conform to the agreement if it had been presented directly to the court. A decision contrary to that here made would, through a technicality, prevent the Superior Court from performing the duty imposed upon it and give to an erroneous decision of the board, which the court had the power to revise, greater force than to an agreement which was conclusive unless reformed or cancelled. It follows that the decree of August 10, 1932, was right so far as it awarded compensation for the period from June 26, 1930, to March 4, 1931. In view of the conclusion reached in respect to the power of the court, it is not necessary to decide whether the board could have revised its decision of March 4, 1931, so that it would conform to the agreement — which the board did not attempt to do.

2. There was no error in the decree so far as it awarded compensation for the period after April 10, 1931.

That the employee received a compensable injury was established by the agreement of February 13, 1930. *Kareske's Case*, 250 Mass. 220, 227. He sustained an injury to his right knee in September, 1929. And the evidence warranted a finding that after April 10, 1931, the employee's physical condition resulting from the injury was such as to incapacitate him partially. It appeared that the employee was a laborer. The physician called by him described his condition and testified that his "present condition, the trouble he now has is due to the injury he sustained in September, 1929," but that he could do some of the work of a laborer and "could probably work a half day before

the knee becomes painful and if he continued working the rest of the day, he would have difficulty and pain." There was other evidence, which need not be recited in detail, tending to show that, though the employee had done laboring work after April 10, 1931, he could not do such work steadily because of his physical condition, and there was evidence to the contrary. The employee testified that before "his injury he worked two years for the same man chopping wood and he would give him a job, if he could do the work," and that he went to work for an employer "excavating and ditch digging, using a shovel and pick," and "They wanted him to haul some wood with the derrick and he left there" — that he "had to leave . . . because he could not stand the work." But there was also evidence that in some instances the employee failed to obtain work or lost employment which he had because there was no work for him. However it cannot be said as matter of law that the board could not find on the evidence that the employee had a diminished earning capacity attributable to his injury rather than to business conditions. *Riley's Case*, 278 Mass. 257.

*Decree affirmed.*