## DOUGLAS HAYES'S CASE.

Worcester.    December 10, 1964. — February 3, 1965.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Workmen's Compensation Act,* To whom act applies, Employment, Jurisdiction of Industrial Accident Board.    *Trust,* Business trust.    *Estoppel.*

One, who as managing trustee, president and treasurer of a business trust exercised "all of the powers of" the trustees and was also the owner of a majority of transferable shares of the trust, was not an "employee" of the trust within G. L. c. 152, § 1 (4), and was not covered by its workmen's compensation insurance, although he also did manual and nonsupervisory work and was injured while doing such work.    [450–452]

Asserted estoppel of an insurer under the Workmen's Compensation Act, G. L. c. 152, to deny certain payments thereunder to one who in fact was not an employee of the insured within § 1 (4) and not covered by the insurance could not confer jurisdiction on the Industrial Accident Board to order such payments.    [452–453]

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Bolster, J.*

*Arthur W. Nichols, Jr.,* for the insurer.

*Remsen M. Kinne, III,* for the claimant.

SPIEGEL, J.    This is an appeal by the insurer from a final decree of the Superior Court awarding payment of "all reasonable medical and hospital bills" to the claimant in

accordance with a decision of the reviewing board which adopted the findings and decision of the single member.

The relevant facts are not in dispute. Under a declaration of trust in 1959, the claimant and three others established the Pinecrest Duck Farm Trust for the purpose of conducting the business of raising and selling ducks. According to the declaration, the claimant is the managing trustee and "shall exercise all of the powers of the Trustees . . . [thereunder], and execute on behalf of the Trustees any and all instruments with the same effect as though executed by all of the Trustees." The claimant's consent is required for the valid delegation by the trustees of various powers "to any one or more" of themselves or others. "The Trustees, except as . . . otherwise specifically provided, shall have the same powers with respect to all real and personal estate at any time held by them as if they were the absolute owners thereof, and shall . . . have powers [inter alia] . . . to purchase and otherwise acquire any real or personal property; to invest . . ., to sell and exchange . . . [any of the Trust property]; and to execute, acknowledge and deliver all such . . . deeds, mortgages, leases, discharges and partial releases . . . as they may deem advisable in the course of the administration of the Trust." "Neither the Trustees nor the shareholders shall ever be personally liable . . . [under the declaration] as partners or otherwise. . . . The beneficial interests of the Trust shall be initially divided into 500 shares of common stock without par value. Said shares shall be issued by the Trustees for such consideration and to such persons as they may deem advisable. Additional shares may be issued at any time with the written consent of the holders of at least 60% of the shares then outstanding. . . . Any Trustee may without impropriety be a shareholder and exercise all rights of a shareholder and powers of a Trustee. . . . Any holder of shares . . . who desires to sell or transfer any of such shares shall offer to sell such shares to the Trustees or their nominee . . . . [The trustees] shall . . . mail to the holder notice of their decision. Within thirty (30) days after

the mailing of . . . [such] notice . . . the Trustees shall
determine the value of such shares and their determina-
tion shall be conclusive and binding. . . . For a period of
twenty (20) days after the mailing of notice of valuation by
the Trustees . . ., [they] . . . on behalf of the Trust, shall
have an option to have all or any part of such shares con-
veyed at the value determined, without interest, to any
nominee . . . of the Trustees . . . .'' The declaration of
trust can be altered or amended, ''except as to exemption of
Trustees and shareholders from personal liability, by . . .
instruments in writing signed by the holders of at least 60%
of the common shares then outstanding, and delivered to the
Trustees.''

By ''Action of Trustees'' on February 27, 1959, the claim-
ant became ''President and Treasurer'' of the trust, and
500 shares of stock were issued to him. On December 29,
1959, the trustees ''accept[ed]'' the claimant's shares for
transfer and reissued 400 shares to the claimant and 100
shares to one Donald D. Hayes. The claimant regarded
this transaction as ''a gift'' of 100 shares from him to his
son. On February 10, 1960, in exchange for certain assets
which the claimant transferred to the trust, the trustees
''issued'' 152 additional shares to him. His work in the
trust business consists of ''[g]eneral supervision of the
whole farm,'' waiting on customers, and performing ''most
of the jobs in processing . . . the ducks.'' His annual sal-
ary has been $10,000. He received the same amount in 1961
even though he performed none of his ordinary duties after
the accident mentioned below. There are ''[a]bout 80''
employees with the trust.

''[U]nder the name of Pinecrest Duck Farm Trust,'' the
claimant obtained workmen's compensation insurance with
the insurer in 1959. On July 11, 1961, while ''waiting on a
customer,'' the claimant ''slipped and fell,'' hurting his
''right ankle and . . . [breaking] both bones of . . . [his]
right leg.'' He was hospitalized and given medical treat-
ment. Prior to the accident he had been told by agents of
the insurer that he was ''covered by Workmen's Compen-

sation.'' Sometime after the accident, the insurer told the claimant that he was not covered by the workmen's compensation policy. It is stipulated that ''the annual premium [under the policy] was from June 30, . . . [1961], to June 30, 1962, and that the Pinecrest Duck Farm Trust was billed on July 11, 1961, in the amount of $1,748.96; that this premium was based on a payroll record submitted which included . . . [the claimant]; [and] that the premium was paid on August 4, 1961. It is further agreed that subsequently following audit of the payroll a credit memorandum was issued on August 16, 1962, and an amount of $367.19 was returned to Pinecrest Duck Farm Trust because of elimination and removal of coverage by the insurer.''

The single member found that the trust ''is a legal entity capable of hiring employees and that [the] claimant is such an employee within the meaning of the Act.'' He also found that the claimant ''sustained an injury on July 11, 1961, which occurred in and arose out of his employment as managing Trustee . . . and . . . by reason . . . [of which] he was partially incapacitated . . .; and further, that during . . . [the] period of partial incapacity he received his regular weekly wages.'' The single member concluded that ''no award of weekly incapacity compensation is due . . . , [but] directed [the insurer] to pay reasonable medical bills in accordance with the provisions of the Act.''

1.   According to G. L. c. 152, § 30, '' [t]he insurer shall furnish to an injured employee adequate and reasonable medical and hospital services, and medicines if needed, together with the expenses necessarily incidental to such services.'' An ''employee'' is ''every person in the service of another under any contract of hire, express or implied, oral or written . . . .'' G. L. c. 152, § 1 (4). The insurer contends that the claimant cannot recover reasonable medical expenses under the act because the claimant was not an ''employee.'' It thus argues that the claimant in his capacity as managing trustee of the Pinecrest Duck Farm ''is in *actual* possession of all the powers of the employer,'' and therefore cannot also be an ''employee'' within the meaning of § 1 (4). We agree.

In *Ryder's Case,* 341 Mass. 661, "the claimant, together with a son . . . and the latter's wife, assumed to enter into a business association under a 'Declaration of Trust.' By its terms 'they purported to form, and did subsequently operate, . . . [a realty trust], of which they were the sole beneficiaries. . . . [The claimant and his son] were named trustees, to whom in such capacity and for the purposes set forth in the declaration 'certain funds, credits and other assets' would thereafter be conveyed. . . . The claimant, who had been employed as a carpenter by his son prior to the formation of the trust, continued to work for the trust in the same capacity after its formation, for which he was paid a weekly wage of $50. The claimant took orders from his son and did not participate in the management of the business." *Id.* at 662–663. We held that the "claimant was not in the service of another when working for himself and another under . . . [the] declaration of trust [and that t]here . . . [was] no basis for holding that the instrument created an entity independent of the claimant." *Id.* at 664. "That the claimant worked under the direction of his son, a cotrustee, did not make him an employee. He had all the powers of management that his son had and in contemplation of law was no less an employer." *Id.* at 666.

We think that *Ryder's Case* controls the determination of the claimant's status under G. L. c. 152, § 1 (4). Here, as managing trustee, president and treasurer, the claimant exercises "all of the powers of the Trustees . . . and execute[s] on [their] behalf . . . any and all instruments with the same effect as though executed by all of the Trustees." He shares this authority with no one. He owns 552 of 652 outstanding shares, and, as managing trustee, can prevent the transfer of outstanding shares held by others by exercising the trustees' option to purchase the shares at whatever price the "trustees" shall determine. The other trustees cannot remove him. Moreover, unlike the claimant in *Ryder's Case,* the claimant herein does exercise powers of "[g]eneral supervision" of the business operations. It is true that the claimant also engages in manual and non-

supervisory tasks, and that it was in the course of performing such tasks that he became injured. "[But] the work, to qualify as employment, should be done under the control of someone. If the officer is himself the ultimate wielder of control, it is difficult to see how even his performance of menial work could be termed employment." Larson, Workmen's Compensation Law, § 54.21. It is argued that the present case is different from *Ryder's Case,* because the shares are transferable. Such business trusts are regulated to some extent by G. L. c. 182 and in many respects have great similarity to corporations. Nevertheless, they have not been treated by our decisions as separate entities like corporations. See *State St. Trust Co.* v. *Hall,* 311 Mass. 299, 303–304; *Swartz* v. *Sher,* 344 Mass. 636, 639. Their trustees have not been regarded as employees. See *Griswold* v. *Director of the Div. of Employment Sec.* 315 Mass. 371, 373–374; *United States* v. *Griswold,* 124 F. 2d 599, 601–602 (1st Cir.). In the light of these decisions and the *Ryder* case, if there is practical reason for treating managing trustees of such business trusts as employees for purposes of workmen's compensation (G. L. c. 152), we think that this is a matter for the Legislature to consider. Hence, we hold that the claimant cannot qualify as an "employee" under G. L. c. 152, § 1 (4). *Ryder's Case,* 341 Mass. 661. See *Cohen* v. *Best Made Mfg. Co.* 92 R. I. 370; *Duvick* v. *Industrial Commn.* 22 Wis. 2d 155. But see *Queen City Furniture Co.* v. *Hinds,* 274 Ala. 584, 589; *Hirsch* v. *Hirsch Bros. Inc.* 97 N. H. 480. Compare *Mahoney* v. *Nitroform Co. Inc.* 20 N. J. 499, 506.

2. The claimant argues that "the insurer is estopped to deny recovery under the act." However, since the claimant is not an "employee" under the act, the Industrial Accident Board had no jurisdiction to direct the insurer to "pay reasonable medical bills" on any basis whatsoever. See G. L. c. 152, § 30. The board "is not a court of general or limited common law jurisdiction; . . . it is purely and solely an administrative tribunal, specifically created to administer the workmen's compensation act in aid and

with the assistance of the Superior Court . . ., and as such possesses only such authority and powers as have been conferred upon it by express grant or arise therefrom by implication as necessary and incidental to the full exercise of the granted powers. . . . It follows that full performance of the conditions of the act are essential prerequisites to the jurisdiction of the board, and that its authority and the statutory limitation upon the exercise of it cannot be enlarged, diminished or destroyed by express consent or waived by acts of estoppel." *Levangie's Case,* 228 Mass. 213, 216–217. *Perkins's Case,* 278 Mass. 294, 299. *Soars* v. *Soars-Lovelace Inc.* 346 Mo. 710, 719–720. *Nagy* v. *Ford Motor Co.* 6 N. J. 341, 349. *Chadwick* v. *North Carolina Dept. of Conservation & Dev.* 219 N. C. 766, 767. *Superior Ins. Co.* v. *Kling,* 160 Texas, 155, 159.

*Decree reversed.*