MARIA N. FERREIRA, administratrix, vs. ARROW MUTUAL
LIABILITY INSURANCE COMPANY.

Bristol.  December 17, 1982. — April 12, 1983.

Present: PERRETTA, ROSE, & DREBEN, JJ.

*Workmen's Compensation Act,* Agreement as to compensation, Lump
sum settlement.

A worker's compensation insurer which, for the stated reason that an in-
jured employee suffered from a nonwork related terminal illness, had
entered into a settlement agreement with the employee providing that
its liability for weekly compensation payments with respect to his in-
jury would be redeemed by a single lump sum payment could not uni-
laterally rescind the agreement following the death of the employee
which occurred after the agreement had been filed with the Division
of Industrial Accidents and considered favorably by a single member
of the Industrial Accident Board but before the board had voted to ap-
prove the agreement.  [635-636]

The Division of Industrial Accidents acted within its authority in approv-
ing subsequent to an employee's death a settlement under G. L.
c. 152, § 48, redeeming an insurer's liability to the employee for week-
ly compensation by a lump sum payment, where the settlement agree-
ment had been executed and presented to the Division and recom-
mended for approval by a single member prior to the employee's
death.  [636-638]


CIVIL ACTION commenced in the Superior Court Depart-
ment on March 6, 1981.

The case was heard by *Staff,* J., a District Court judge sit-
ting under statutory authority.

*James C. Gahan, Jr. (John Underhill* with him) for the
defendant.

*Orlando F. deAbreu* for the plaintiff.

DREBEN, J.  The issue before us is whether the Division of
Industrial Accidents (Division) acted within its authority in
approving after an employee's death a settlement under

G. L. c. 152, § 48, which had been executed and presented to the Division and recommended by a single member when the employee was still alive. We affirm the judgment enforcing the approved settlement.

In September, 1980, the employee and the insurer filed with the Division an agreement for redeeming the insurer's liability for weekly compensation by a payment of $7,500. Such an agreement may be initiated by the parties, *Gannon v. Contributory Retirement Appeal Bd.*, 338 Mass. 628, 634 (1959), but requires approval by the Division. See G. L. c. 152, § 6. *Hansen's Case,* 350 Mass. 178, 180 (1966). Section 48 of c. 152 sets forth the criteria for such approval (or initial determination by the Division) and, as amended by St. 1953, c. 314, § 6, provides in relevant part: "Whenever the division deems it to be for the best interests of the employee or his dependents, and the parties agree, the liability for compensation may be redeemed by the payment in whole or in part by the insurer of a lump sum of an amount to be fixed by the division, not exceeding the amount provided by this chapter." The printed form, supplied by the Division for such agreements, requires a statement of the "reasons [the] settlement is in the employee's best interest." In the space provided, the parties explained that in the course of treatment of the employee's work-related back injury it was discovered that he was suffering from serious diseases, including lung cancer and tuberculosis, which were not work related. His condition was deemed inoperable, and "[i]n the opinion of the treating physician the employee does not have long to live."

Thus, as the judge stated in his memorandum, at the time of execution of the written agreement, "[b]oth the employee and the insurer were fully aware that the employee was terminally ill." Similarly, at a conference hearing before a single member[1] on October 23, 1980, the employee's condi-

---

[1] Rule IX(2) of the Rules of the Division of Industrial Accidents, promulgated pursuant to G. L. c. 152, § 5, provides for a conference for the consideration of an agreement to redeem liability when application therefor is made. Judicial notice may be taken of these rules. *Bagge's Case,* 5 Mass. App. Ct. 839, 840 (1977).

tion was discussed, and counsel for the insurer joined counsel for the employee in urging approval of the lump sum settlement. The single member, after receiving confirmation that the employee, who was hospitalized at the time of the conference, approved the settlement, recommended that the full board (see G. L. c. 23, §§ 14 & 15) approve the agreement.

On November 3, 1980, seven weeks after executing the agreement, the employee died. The next day, the insurer wrote to the Division requesting that the agreement not be approved. The board, with three dissents, approved the agreement on January 5, 1981.

In its appeal, the insurer challenges the validity of the board's approval of the lump sum agreement on two grounds. First, it argues that since the agreement was not binding prior to Division approval, *Conlon* v. *Lawrence,* 299 Mass. 528, 532 (1938), it was free to withdraw prior to such approval. It also argues that the board lacked jurisdiction at the time of approval since the employee's right to weekly payments had then ceased by reason of his death.

1. The November 4, 1980, letter does not contain a clear withdrawal from the agreement by the insurer. Assuming, however, that it was intended as such, the withdrawal came too late. Barring mutual mistake, fraud or other principles of equity, we believe that when an instrument with the finality of an agreement for redeeming liability has been executed and filed with the Division, presented to the single member for approval at a hearing conference, and recommended for approval by that member, the insurer may no longer unilaterally rescind the agreement. Cf. *O'Reilly's Case,* 258 Mass. 205, 208-209 (1927); *Perkins's Case,* 278 Mass. 294, 299-301 (1932); *Taylor* v. *Hartford Fire Ins. Co.,* 22 Ill. App. 3d 164, 166-167 (1974). This is particularly true where, as here, the very basis of the agreement was the employee's terminal illness. The board could well determine that to allow rescission by the insurer at this stage of the proceedings simply because the agreement had not been approved before the death of the employee would,

even apart from equitable considerations, be disruptive of the time and energy of the Division and hence contrary to the principles of sound administrative procedure.[2]

2. The second ground for reversal urged by the insurer is that, since the employee's right to weekly compensation benefits terminated at his death, the board was without jurisdiction to approve an agreement redeeming the insurer's liability for such benefits after his death.

A different but somewhat analogous issue was before the court in *Henderson's Case*, 333 Mass. 491, 494 (1956). There, an employee died, and the question was whether his dependents were entitled to payments for specific injuries under G. L. c. 152, § 36, in addition to death benefits under § 31. His widow claimed she was entitled to the § 36 benefits by reason of § 36A, as appearing in St. 1951, c. 494, which allows dependents to collect the § 36 amounts "[i]n the event that an injured employee who has *become entitled* to compensation under section thirty-six dies before fully collecting the said compensation" (emphasis supplied). Prior to the enactment of § 36A, cases cited in *Henderson* had held that no award could be made under § 36 for specific injuries when the claim was made for the first time after the employee's death. The insurer in *Henderson* argued that the employee had not "become entitled" to the § 36 benefits because such entitlement could only be established under the statutory scheme by a voluntary agreement approved by the board or by a decision of the board after adversary hearings. In rejecting the insurer's

___

[2]We recognize that there is authority elsewhere allowing rescission prior to approval, but we believe the cases are distinguishable. See, e.g., *Rogers* v. *Concrete Sciences, Inc.*, 394 So. 2d 212, 213 (Fla. Dist. Ct. App. 1981) (claimant's lawyer approved settlement after claimant's death); *Nguyen* v. *Lengsfield Bros.*, 417 So. 2d 525, 528 (La. Ct. App. 1982) (employee allowed to withdraw where change in law after agreement); *Pepitone* v. *State Farm Mut. Ins. Co.*, 346 So. 2d 266, 268 & n.2 (La. Ct. App. 1977), and *Gross* v. *National Health Enterprises, Inc.*, 582 S.W.2d 379, 380 (Tenn. 1979) (cases in which the agreement had never been presented to the approving body). See also *Chavez* v. *Industrial Acc. Commn.*, 49 Cal. 2d 701, 703 (1958), where the court upheld a commission disapproval of an agreement after the employee's death.

contentions, the *Henderson* court held that the word "entitle" refers to the "time of the happening of the event upon which the employee bases his claim. Otherwise, the success or failure of those for whose benefit § 36A was enacted might depend upon the duration of negotiations or of the litigation and perhaps upon the interval between the date of injury and the date of death." *Id.* at 495.

In *Bagge's Case,* 369 Mass. 129 (1975), the court followed *Henderson* and upheld benefits under §§ 36 and 36A based on findings that the employee who was fatally injured and died shortly after the accident would have experienced losses of function had he lived, for which he would have been entitled to compensation.

Although here we are dealing with different provisions of the compensation law, namely §§ 6 and 48, we think *Henderson's Case* and *Bagge's Case* suggest that, language permitting, the act should be construed in a manner which does not make the arbitrary date of approval by the Division determinative of the rights of an employee who has died. "Otherwise, the success or failure of those for whose benefit . . . [§ 48] was enacted might depend upon . . . the interval between the date" of filing of the agreement and the date of its approval by the Division. *Henderson's Case,* 333 Mass. at 495. To allow the outcome to depend on "such arbitrary matters" as the "time lapse" between filing and approval is neither consonant with judicial authority, see *Bagge's Case,* 369 Mass. at 132 n.5, nor with the settled rule that the statute is "to be construed liberally for the protection of the injured employee." *Meley's Case,* 219 Mass. 136, 139 (1914).

We see no language in § 48 which precludes the Division from making findings subsequent to the death of the employee that the agreement when made (or at the time of conference or even at the date of approval) is in the "best interests of the employee or his dependents." Cf. *Jenkins* v. *Workers' Compensation Appeals Bd.,* 48 Cal. App. 3d 570, 573-574 (1975), for a consideration of the factors which may make a lump sum payment in the best interests of an em-

ployee or his dependents where life expectancy is short. Indeed, we note that G. L. c. 152, § 1(4), as appearing in St. 1945, c. 369, provides that "any reference to an employee who has been injured shall, when the employee is dead, also include his legal representatives, dependents and other persons to whom compensation may be payable."

We also note that rule IX(1) of the Division, see note 1, *supra*, establishes that the date of execution of the agreement, and not the date of approval by the board, is the time which normally fixes the amount of the insurer's liability. The rule provides that the insurer, after approval, is "entitled to deduct from the lump sum the amount of weekly payments made subsequent to the date of such agreement unless otherwise ordered."

In these circumstances and where § 48 states only the broad legislative policy of considering the "best interests of the employee or his dependents," we see no obstacle in deferring to the Division interpretation which permits approval subsequent to an employee's death of a settlement executed and presented to the Division prior to his death. *Rock* v. *Massachusetts Commn. Against Discrimination*, 384 Mass. 198, 204 (1981) (administrative interpretation accorded deference where agency must interpret a legislative policy which is only "'broadly set out in the governing statute'").[3]

*Judgment affirmed.*

---

[3] But see *Zielinski* v. *General Motors Corp.*, 1 N.Y.2d 424, 426 (1956), where, under a somewhat different statute, the court held that the board had no jurisdiction. But see also *Barncord* v. *Kansas Dept. of Transp.*, 228 Kan. 289 (1980), affirming 4 Kan. App. 2d 368 (1980), involving an oral agreement not presented to the director, where the court indicated that the relevant statute would preclude the director from approving an agreement after the employee's death. There are dissenting opinions in both of these cases.