JOHANN L. LEE[1] *vs.* INTERNATIONAL DATA GROUP.

No. 99-P-1724.

Suffolk. November 14, 2001. - June 10, 2002.

Present: LAURENCE, SMITH, & KAFKER, JJ.

*Workers' Compensation Act,* Coverage, Jurisdiction of court, Jurisdiction of Industrial Accident Board.

Where a civil complaint could be viewed as alleging that the defendant had not insured its employees for workers' compensation purposes, thereby giving rise to a cause of action by the plaintiff pursuant to G. L. c. 152, §§ 66, 67, the judge erred in denying the defendant's motion for summary judgment on the ground that the court lacked subject matter jurisdiction, given that the record left no doubt that the defendant was in fact insured for workers' compensation purposes prior to and on the date of the plaintiff's injury, and therefore, the department of industrial accidents had exclusive jurisdiction over the action. [113-118]

CIVIL ACTION commenced in the Boston Municipal Court Department on December 16, 1994.

After removal to the Superior Court Department, the case was heard by *Vieri Volterra,* J., on motions for summary judgment.

*Richard T. Corbett (Jacqueline L. Allen* with him) for the defendant.

*Gerald T. Anglin (Mark T. Collins* with him) for the plaintiff.

LAURENCE, J. In December, 1994, Sylvia Liotta (the plaintiff), who had suffered serious and permanently debilitating injuries when she fell down a flight of stairs in December, 1991, while at work, commenced a negligence action against the appellant, International Data Group (IDG). Her complaint alleged that

---

[1]As personal representative of the estate of Sylvia Liotta, the original plaintiff, Sylvia Liotta, having apparently passed away in 1999. The record does not specify whether Ms. Lee is the administratrix or executrix of Sylvia Liotta's estate.

IDG (whom she subsequently contended had been her employer) had a responsibility to maintain workers' compensation insurance covering her, which it had failed to do. As a result, the plaintiff asserted, she was unable to secure workers' compensation benefits and was, therefore, entitled to damages at law.[2] In

---

[2]See G. L. c. 152, §§ 66, 67. The complicated procedural and employment background requires discussion. In early 1996, in litigation that the plaintiff had commenced separately in 1994 but was later consolidated with the instant action, she obtained a determination of liability on the part of the individual (Alexander Randall) and the corporations (Boston Computer Exchange [BCE] and East West Education Development Foundation [East West]) which had originally hired her and which, she later alleged, were jointly liable with IDG for her employment. She also received a judgment for damages against Randall and East West in the amount of $1,315,238. (BCE alone appealed the liability ruling against it; its appeal was stayed pending a trial on the issue of damages, which has not yet occurred or even been actively pursued.)

The relevant (and uncontroverted) facts underlying that litigation (and this) are as follows. At all relevant times, Alexander Randall was the president of BCE. In 1990, Patrick McGovern, the president and chairman of IDG, discussed with Randall his vision of providing used computers to the emerging countries in Eastern Europe. As a result, McGovern had IDG's tax department set up East West Education and qualify it to receive computers for that purpose. In December, 1990, McGovern, on behalf of IDG, and Randall, on behalf of BCE, entered into an agreement "to set up the relationship between [BCE] and [IDG] for conducting research on the potential supply of computers for donation to [East West]." Under the agreement, BCE was "retained by IDG to research the supply of used computers . . . that could be donated or sold, and the supply of manufacturer's overstock that could be donated to [East West]." IDG agreed to "pay BCE for 40% of [] Randall's time, 50% of a secretary/assistant, and 100% of the cost of mailing, telephone, printing, and preparing materials to perform the research," as well as to provide advertising space to East West in IDG publications and supply BCE with "research data and mailing lists." BCE would provide the "desk, telephones and office space, maintain the staff, produce advertising, documents, and form letters, tally research results and prepare reports on progress and results." The project was expected to take three months to complete, with the parties agreeing to "examine the potential for continued operations of [East West] through the efforts of [] BCE's staff," at the end of the three month period. Randall was the executive director of East West.

The plaintiff began working for East West on a part-time basis on January 3, 1991. Initially, she was hired by Randall to be the personal assistant to another worker, but when that worker left East West in February, 1991, the plaintiff assumed her responsibilities as secretary-personal assistant to Randall and began working full time, earning $400 per week. Ultimately, the East West research project was extended beyond the three month deadline set forth in the agreement between IDG and BCE. In July, 1991, Randall wrote to Mc-

response, IDG contended, among other things, that it had in fact carried workers' compensation insurance at all relevant times and that the plaintiff had failed to exhaust her administrative remedies available from the Department of Industrial Accidents (DIA), which (IDG argued) had exclusive jurisdiction over her claim.

In July, 1995, IDG filed a motion to dismiss for want of subject matter jurisdiction, pursuant to Mass.R.Civ.P. 12(b)(1), 365 Mass. 755 (1974), and for failure to state a claim upon which relief can be granted, pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974); or, in the alternative, for summary judgment, under Mass.R.Civ.P. 56(b), 365 Mass. 824 (1974). In opposition, the plaintiff asserted that during discovery, IDG had effectively denied that it had workers' compensation insurance that covered her.[3] She reiterated her contention that IDG had responsibility for her employment, either directly or as the

---

Govern, informing him of BCE's accounting department's lapses in sending invoices for East West to IDG for payment and his intent to open a checking account for East West in order to eliminate the invoicing problems. In that correspondence, Randall further stated that he was in the process of separating East West and BCE. In July, 1991, Randall left BCE to run East West full time. East West filed its articles of incorporation with the secretary of state in October, 1991, listing McGovern as its founder and president. In that same month, Randall and the plaintiff discussed Randall's intention to give her health insurance benefits, provision for which was not made until January, 1992. East West began full-time operations in November, 1991.

The plaintiff testified in deposition that while she worked for East West, she received her pay check from BCE. The record shows that in 1991, IDG provided East West with a total grant of $80,000, which was paid in installments over the course of the year, and that East West obtained additional funding from a source other than IDG. In November, 1991, IDG informed East West that it could no longer support East West past December, 1991, but would be willing to be a voluntary contributor. Thereafter, East West continued operating with the financial support of grants from other sources. On December 20, 1991, the plaintiff was injured when she fell down a circular staircase at work. At the time, East West was not insured for workers' compensation purposes, although IDG was. After first unsuccessfully suing the company that constructed the staircase in 1992, the plaintiff filed suit in Suffolk Superior Court in April, 1994, against a trust that owned the building where the accident occurred, Randall (who also was principal of that trust), East West, BCE, and Inacom Corp., an entity which owned a controlling interest in BCE, obtaining the result described above.

[3]This assertion, ultimately accepted by the motion judge, was apparently based upon the ambiguous deposition answers — "To the best of my knowledge, no" — to correspondingly ambiguous written questions provided

controlling alter ego of the individual and organizations which had hired her.

Before IDG's motion was heard, in February, 1998, the plaintiff filed a cross motion for summary judgment. In April, 1998, a Superior Court judge denied IDG's motion for summary judgment and allowed the plaintiff's motion. The judge held that the undisputed facts established that IDG had so pervasively controlled the organizations for which the plaintiff had worked in 1991 (BCE and East West, see note 2, *supra*) as to be deemed her employer (under the "disregard of corporate identity" principle, see *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 618-619 [1968]), and that IDG was consequently liable for its failure to provide workers' compensation insurance for her. Following the judge's denials of two motions for reconsideration and his assessment against IDG of the same $1,315,238 in damages previously assessed against her original employers (Randall and East West, see note 2, *supra*), final judgment was entered against IDG in that amount.

IDG makes three arguments on appeal: (1) the judge erred in denying its motion for summary judgment, because the Superior Court lacked subject matter jurisdiction over the action; (2) in any event, as matter of law, the facts did not support the conclusion that the separate corporate identities should be disregarded; and (3) the judge erred in imposing upon IDG the damages assessed against East West and Randall without giving IDG an opportunity to defend against the damages claim. We agree with IDG's first argument, that it was entitled to summary judgment on its showing of a want of subject matter jurisdiction in the trial court and, accordingly, reverse.

Under G. L. c. 152, an employer's obligation to obtain workers' compensation insurance is limited to providing coverage for its own employees. G. L. c. 152, §§ 1(5), 25A. Whether or not the plaintiff was an employee of IDG entitled to claim workers' compensation benefits is an issue that is distinct from the ques-

by an individual identified as "IDG's manager of legal affairs" in the earlier action against Randall and East West (with no evidence in the record establishing that individual's authority, position or status for purposes of Mass.R.Civ.P. 32[a], as amended, 392 Mass. 1105 [1984]) that asked, "Did IDG have any insurance policies covering Alexander Randall or Mr. Randall's assistants?" and "Were there any agreements about insurance?"

tion whether IDG carried workers' compensation insurance for its employees on the date of the accident.

Although the complaint is vague in its conciseness, the plaintiff conceded that the cause of action against IDG was based upon the existence of at least a de jure employment relationship between the plaintiff and IDG. Accordingly, the complaint may be viewed as alleging that IDG did not insure its employees for workers' compensation purposes, thereby giving rise to a cause of action against the employer at law. See G. L. c. 152, §§ 66, 67. Even if the judge had correctly determined that the separate identities of IDG and East West should be disregarded (a determination with which we disagree, see note 7, *infra*), the resulting conclusion, that IDG and East West are one and the same, leads to the same ultimate factual reality for purposes of the summary judgment proceedings in this case — that the plaintiff was an employee of IDG. See *Berger* v. *H.P. Hood, Inc.*, 416 Mass. 652, 656-657 (1993), *S.C.*, 424 Mass. 144 (1997).

Thus, under either theory of liability, the cause of action ultimately rests upon the allegation that IDG failed to insure its employees, thereby exposing it to liability in an action for damages. Moreover, in the absence of a reservation of rights by the employee under G. L. c. 152, § 24, jurisdiction to maintain a cause of action in Superior Court against an employer for injuries arising out of and in the course of the employment must be based solely upon the employer's alleged failure to secure workers' compensation insurance for its employees. See G. L. c. 152, §§ 66, 67. There is, however, no doubt on this record that IDG was in fact insured for workers' compensation purposes prior to and on the date of the plaintiff's injury.[4] As a result, the issue of the plaintiff's employment status should not

---

[4]In support of its motion to dismiss, IDG had offered the affidavit of Robert McKeever, a claims supervisor from the Insurance Company of North America, a CIGNA Property and Casualty Company, who stated that, on the date of the plaintiff's injury, IDG's employees were insured in the Commonwealth of Massachusetts for workers' compensation purposes by an affiliated company, Pacific Employers Insurance Company. In support of his statement, McKeever referred to attached declaration pages confirming that IDG had workers' compensation insurance on the date of the injury. The plaintiff's reliance on the inconclusive answer to written questions of an IDG employee of unknown authority in the action against Randall and East West, in which

have been sorted out in the Superior Court in the first instance, because if she was an employee of IDG (as she claimed and the judge found), the DIA has exclusive jurisdiction over this action. G. L. c. 152, § 24. Consequently, the complaint should have been dismissed.

Contrary to the plaintiff's appellate claim, allowing IDG's jurisdictional motion would not result in "a windfall for unscrupulous employers" who would be able to insulate themselves from G. L. c. 152, § 66, liability by insuring only one employee while leaving "one thousand employees" uninsured.[5] If the plaintiff was, or could be deemed, an employee of IDG, she would be covered by IDG's workers' compensation policy. See Locke, Workmen's Compensation § 126, at 130 (2d ed. 1981) ("When an employer becomes a subscriber, the insurer assumes an obligation as broad as the act toward all employees within the business. The act does not permit an employer to become a subscriber as to one part of its business and to remain a non-subscriber as to the rest of a business which is in substance and effect conducted as one enterprise"). Moreover, "[t]hat the terms of the policy do not appear in the record is of no consequence. The employee has against an insurer all the rights which the [workers'] compensation act gives him, whatever limitations are written in the policy." *Stoltz's Case*, 325 Mass. 692, 696 (1950).[6]

In any event, to the extent an issue of insurance coverage may exist, the DIA has full power to decide such questions of coverage raised in connection with a claim for compensation, and "[t]he parties have no right to try out the issue in a separate proceeding in court." Locke, Workmen's Compensation § 131,

IDG was not a party (see note 3, *supra*), for the proposition that IDG had thereby denied her workers' compensation benefits and was estopped from now claiming it had provided for them, is misplaced, being unsupported by the authorities cited or by any authority of which we are aware.

[5]*Coppola* v. *Beverly*, 31 Mass. App. Ct. 209 (1991), on which the plaintiff relies, does not support her. That decision dealt with a public employer, which, unlike private employers, has the ability to elect whether or not to cover certain classes of employees. *Id.* at 210-212.

[6]Correspondingly, the insurer may bring an action in contract "to recover the balance of premiums earned [with respect to all employees covered by the workers' compensation act] by virtue of this statutory coverage." Locke, Workmen's Compensation § 126, at 132.

at 136. Compare *Luchini* v. *Commissioner of Rev.*, 436 Mass. 403, 404-405 (2002) (where the agency has jurisdiction to provide an administrative remedy, it should be invoked prior to seeking judicial relief in the absence of a demonstration that such remedy would be futile or seriously inadequate, under the exhaustion principle); *Boston Edison Co.* v. *Brookline Realty & Investment Corp.*, 10 Mass. App. Ct. 63, 66-67 (1980) (administrative rather than judicial resolution of a controversy within an agency's authority is preferable under the doctrine of primary jurisdiction).

The plaintiff also misconstrues the insurer's obligation to pay benefits under G. L. c. 152, § 7, because that obligation is not triggered until the insurer receives either "an employer's first report of injury," which must be submitted on a form prescribed by DIA, G. L. c. 152, § 6; or "an initial written claim for weekly benefits on a form prescribed by the department," which would be filed by the claimant employee. G. L. c. 152, § 7. There is no evidence on this record that the plaintiff ever filed a claim with DIA against IDG or its insurer, or made any effort to obtain compensation for her injuries other than by launching a series of court actions — in defiance of one of the original and fundamental purposes of the workers' compensation system, "to decrease the opportunity for unnecessary litigation." *Nichol's Case*, 217 Mass. 3, 5 (1914). Any alleged failure of either IDG or its insurer to comply with G. L. c. 152, §§ 6, 6A, or 7, does not create a cause. of action under G. L. c. 152, §§ 66, 67, nor does it require (as the plaintiff contends) application of the analysis set forth in *Barrett* v. *Transformer Serv., Inc.*, 374 Mass. 704, 711-712 (1978) (New Hampshire employer whose workers' compensation insurance was limited to New Hampshire and New York could not avoid liability under G. L. c. 152, §§ 66, 67, by obtaining workers' compensation insurance covering Massachusetts employees six months after an employee had suffered injuries on the job in Massachusetts but before the injured employee had commenced suit after being informed that there was no such coverage in Massachusetts). Both G. L. c. 152, §§ 6 and 7(2), carry penalty provisions for violations of these statutory requirements.

Contrary to the plaintiff's claim, neither *O'Dea* v. *J.A.L., Inc.*,

30 Mass. App. Ct. 449 (1991), nor *Barrett* v. *Transformer Serv., Inc.*, *supra*, precludes IDG from raising the issue of lack of subject matter jurisdiction. *O'Dea* was tried on the basis that the employer had failed to have workers' compensation insurance in place on the date of the injury (coverage having been previously cancelled for the employer's failure to pay premiums). *O'Dea* v. *J.A.L., Inc.*, *supra* at 450. Only after the entry of a substantial judgment against the employer did the insurance company "discover" that the policy had been cancelled because of "clerical error." *Id.* at 451 & n.7. Contending that the matter should have been within the exclusive jurisdiction of the DIA, the employer unsuccessfully brought a postjudgment, after-the-fact challenge to the judgment as void (a narrow and rarely applied concept) under Mass.R.Civ.P. 60(b)(4), 365 Mass. 829 (1976). *Id.* at 453-456. By contrast, IDG is before the court on direct appeal from the denial of its motion to dismiss or for summary judgment, which asserted its maintenance of workers' compensation insurance at all relevant times and expressly raised the issue of subject matter jurisdiction. Cf. *McCracken* v. *Sears, Roebuck & Co.*, 51 Mass. App. Ct. 184, 189 (2001). Unlike the questionable employer in *Barrett*, IDG did not obtain its workers' compensation insurance policy only after the date of the plaintiff's injury, or attempt to make it applicable by the retroactive dating of an endorsement subsequent to the commencement of the employee's tort action. *Barrett* v. *Transformer Serv., Inc.*, 374 Mass. at 711-712.[7]

Accordingly, we reverse the judgment in favor of the plaintiff

[7]We agree with IDG that, in any event, this record contained insufficient facts to support the judge's ruling that IDG's actions with respect to East West required disregarding the separate identities of the two entities as matter of law. Although the motion judge acknowledged that simply counting the factors supporting piercing the corporate veil does not determine the issue, see *Evans* v. *Multicon Constr. Corp.*, 30 Mass. App. Ct. 728, 736 (1991), there is an absence of evidence in the summary judgment record supporting his ultimate determination that "disregarding the separate identities of IDG and East West is appropriate." The judge's memorandum of decision shows that he rested his decision on IDG's alleged funding and control of East West. On these issues, the judge appears to have found facts that are not in the record. For example, on the issue of funding, the judge found that East West was solely funded by IDG, but the documentary evidence in the record is to the contrary. IDG agreed to pay only fifty percent of the plaintiff's salary, and major funding of East West was also provided by a source other than IDG. In

and remand the case to the Superior Court for entry of a judgment in favor of IDG.

*So ordered.*

---

addition, the correspondence between McGovern and Randall does not support a conclusion that IDG "exercised pervasive control over East West." Nothing in the correspondence indicates that East West was carrying out tasks pursuant to IDG's command, or that Randall sought permission from IDG before taking action on behalf of East West. "There is present in the cases which have looked through the corporate form an element of dubious manipulation and contrivance, finagling, such that corporate identities are confused and third parties cannot be quite certain with what they are dealing." *Ibid.* See *Gordon Chemical Co.* v. *Aetna Cas. & Sur. Co.*, 358 Mass. 632, 638 (1971). There are insufficient facts to support such a finding on this record.