## JEROME J. DONOVAN, THIRD'S CASE.

No. 01-P-648.

Suffolk. September 19, 2002. - July 15, 2003.

Present: JACOBS, DOERFER, & COHEN, JJ.

*Workers' Compensation Act,* Lump-sum settlement. *Estoppel.*

The reviewing board of the Department of Industrial Accidents properly concluded that a proposed lump sum settlement of a workers' compensation case, entered in response to the claimant's agreeing to withdraw his appeal from the denial of his claim for total disability benefits under G. L. c. 152, § 34, was enforceable where, notwithstanding that the claimant died before the lump sum settlement agreement was signed by a representative of the insurer, the insurer was regarded as estopped from relying on the absence of its representative's signature from the settlement agreement. [568-570]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Joseph J. Durant* for the insurer.

*Kenneth M. Homsey* for the employee.

JACOBS, J. The Liberty Mutual Insurance Company (Liberty) appeals from a decision of the reviewing board of the Department of Industrial Accidents (DIA) holding enforceable a lump sum agreement between Liberty and Jerome J. Donovan, III, notwithstanding that Donovan died before the agreement was signed by Liberty and formally approved by the DIA. We affirm.

*Background.* The relevant facts and procedural background[1] are as follows: Donovan, having sustained a work-related back injury in 1989, received partial disability benefits from Liberty, the workers' compensation insurer of Donovan's employer. By

---

[1] The recited background is based upon the stipulation of the parties, elements of which are quoted, and uncontroverted explanatory matters.

order dated June 26, 1997, an administrative judge of the DIA denied Donovan's claim for total disability benefits under G. L. c. 152, § 34. On July 8, 1997, Donovan appealed that decision. During the pendency of his appeal, Donovan and Liberty engaged in settlement discussions which culminated on July 16, 1997, in an oral agreement to settle Donovan's case for $50,000. This agreement was memorialized in a letter of Donovan's counsel to Liberty dated July 16, 1997. On the same date, Donovan withdrew his appeal of the administrative judge's denial of total disability benefits and, through counsel, submitted a request for a lump sum conference to the DIA.

On August 15, 1997, the date scheduled for the lump sum conference, Donovan took ill and the conference was postponed to September 5, 1997. On August 25, 1997, Donovan, while hospitalized, signed a lump sum settlement agreement form and other related documents in preparation for presentation to an administrative law judge for approval on September 5, 1997, without the necessity of Donovan's appearing. Donovan died in the hospital on August 29, 1997, of causes unrelated to his industrial injury.

The parties stipulated[2] that "[a]ll forms necessary and required by the [DIA] and [G. L. c.] 152 . . . were submitted and such requirements satisfied, except that the [l]ump [s]um [s]ettlement [a]greement did not bear the signature of [Liberty's] counsel." "The attorney for [Liberty] has refused or declined to sign the lump sum settlement agreement forms because of [Donovan's] death." At no time prior to September 5, 1997, the date of the rescheduled conference, had Liberty withdrawn its offer to settle the case for $50,000.

Ultimately,[3] the reviewing board decided that, in the circumstances, the lump sum agreement was enforceable without

[2]The quoted material is from the hearing judge's decision and was included in his statement of the parties' stipulation. While it is not part of the stipulation contained in our supplemental record, neither party has objected to its inclusion in the judge's version.

[3]The attorney for Donovan and his estate and the attorney for Liberty appeared at the lump sum settlement conference on September 5, 1997. An administrative law judge, over the objection of the attorney for Donovan and his estate, withdrew the case from the conference list because the lump sum settlement agreement had not been signed by Liberty's attorney. Another

Liberty's signature. Accordingly, it approved the agreement and ordered Liberty to pay the settlement amount. Liberty appealed, and the single justice reported the case for decision by a full panel of this court.

*Discussion.* Among the circumstances relied on by the reviewing board in approving the lump sum agreement was the withdrawal by Donovan of his appeal of the order denying him total disability benefits. The reviewing board stated: "The insurer's $50,000.00 offer induced [Donovan] to withdraw his appeal . . . which fact was made known to the insurer, and which forbearance to appeal could only be remedied by the enforcement of the promise to pay $50,000.00." This interrelationship of Liberty's offer and the withdrawal of the appeal is well supported in the record by the July 16, 1997, letter of Donovan's counsel to Liberty, which confirmed the receipt of the offer and at the same time indicated "[t]he employee [ac]cepts that offer subject to approval of the [DIA], and . . . will withdraw the appeal and request lump sum proceedings." In support of its decision, the reviewing board relied on *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760 (1978), in which the following quotation from § 89B(2) and illustration 6 of the Restatement (Second) of Contracts (Tent. Drafts Nos. 1-7, 1973) appears: "An offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice." Compare Restatement (Second) of Contracts § 90 (1981).

We agree with the result reached by the reviewing board and conclude that the circumstances call for the application of the doctrine of equitable estoppel. The effective application of that doctrine "requires: (1) '[a] representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made[;] (2)

administrative judge, after hearing, decided he lacked authority to enforce the parties' agreement and, therefore, denied Donovan's request for approval or enforcement of the agreement. The matter was then appealed to the reviewing board.

[a]n act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made[;] (3) [and d]etriment to such person as a consequence of the act or omission.' *Cellucci v. Sun Oil Co.*, 2 Mass. App. Ct. 722, 728 (1974)[, *S.C.*, 368 Mass. 811 (1975)]." *Boylston Dev. Group, Inc.* v. *22 Boylston St. Corp.*, 412 Mass. 531, 542 (1992). In the context of a lump sum offer, the induced act or omission must be something more than an ordinary agreement to redeem liability pursuant to G. L. c. 152, § 48.

Here, it is uncontroverted that Donovan agreed to withdraw his appeal in response to Liberty's offer of settlement. The detriment he suffered was the abandonment of his claim of § 34 benefits in an administrative appeal. See G. L. c. 152, § 10A(3). That detriment is not made moot by Donovan's death in that the appeal, claiming § 34 benefits to the date of death, could have been pursued by his estate. See Locke, Workmen's Compensation § 469 (2d ed. 1981) and § 14:6 (Nason, Koziol & Wall Supp. 2002). While we are mindful of the limits of the doctrine of estoppel with respect to the statutorily defined authority of an administrative agency such as the DIA, see *Levangie's Case*, 228 Mass. 213, 217 (1917); *Hayes's Case*, 348 Mass. 447, 452-453 (1965), we endorse the reviewing board's remedy as both within the jurisdiction of the DIA and consistent with the settled proposition that c. 152 is "to be construed liberally for the protection of the injured employee." *Meley's Case*, 219 Mass. 136, 139 (1914). *Hepner's Case*, 29 Mass. App. Ct. 208, 212 (1990). See *Utica Mut. Ins. Co.* v. *Liberty Mut. Ins. Co.*, 19 Mass. App. Ct. 262, 267 (1985) (citations omitted) ("The [DIA] is not bound by . . . legal technicalities, but, rather, governed by the practice in equity. The term 'in equity' is consonant with the liberal construction to be given to c. 152 and has been 'applied to supply a remedy [even] where there [may be] a gap in the statute.' Locke, Workmen's Compensation, *supra* § 29, at 34"). The remedy here is to regard Liberty as estopped from relying on the absence of its signature from the lump sum settlement agreement signed by Donovan before

he died and to treat that agreement as enforceable. Compare *Bertocchi's Case, ante* at 563-565.[4]

In its decision, the reviewing board noted that "[t]he parties stipulated at oral argument . . . that the only argument [Liberty] maintained for its refusal to honor the lump sum agreement was the lack of its signature." Accordingly, there is no issue, and none is argued to us, as to whether the agreement was in Donovan's best interest.[5] The decision of the reviewing board is affirmed. Donovan's estate is awarded reasonable costs and fees pursuant to G. L. c. 152, § 12A.

*So ordered.*

---

[4]In light of our decision, we do not address the issue of the legal status, absent estoppel, of the lump sum agreement signed only by Donovan. Compare *Ferreira* v. *Arrow Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 633 (1983), and *Bertocchi's Case, ante* at 564.

[5]In any event, the record amply supports that the agreement was in his best interest. An addendum to the lump sum agreement signed by Donovan indicates that he had begun receiving monthly social security disability benefits as of July, 1997, and that those benefits would be subject to a larger offset for periodic workers' compensation benefits than would be the case if he accepted the lump sum offer. See Locke, Workmen's Compensation § 620(3) (2d ed. 1981) and § 23:11(3) (Nason, Koziol & Wall Supp. 2002).