## MICHAEL OPARE'S CASE.

No. 09-P-1088.

Suffolk. February 4, 2010. - August 31, 2010.

Present: CYPHER, BROWN, & RUBIN, JJ.

*Jurisdiction,* Superior Court. *Superior Court,* Jurisdiction. *Workers' Compensation Act,* Jurisdiction of court, Lump-sum settlement. *Administrative Law,* Judicial review.

A Superior Court judge erred in dismissing on jurisdictional grounds, pursuant to Mass.R.Civ.P. 12(b)(1), an injured employee's civil action challenging the approval by an administrative judge of the Department of Industrial Accidents (department), over the employee's objection, of a lump sum settlement agreement pursuant to G. L. c. 152, § 48, where the statutory scheme requires that subsequent to approval by the department of a lump sum agreement, further inquiry of the merits of the controversy must be had in Superior Court. [541-542]

An administrative judge of the Department of Industrial Accidents acted in excess of her authority in approving, over an injured employee's objection, a lump sum settlement agreement pursuant to G. L. c. 152, § 48. [542-544]

CIVIL ACTION commenced in the Superior Court Department on August 4, 2008.

The case was heard by *Linda E. Giles*, J., on a motion to dismiss.

*Israel M. Sanchez, Jr.*, for the employee.

*Timothy J. Casey*, Assistant Attorney General, for Commissioner of the Department of Industrial Accidents.

BROWN, J. A lump sum settlement, formally "approved" by an administrative judge of the Department of Industrial Accidents (department) pursuant to G. L. c. 152, § 48, is at issue in this appeal. Despite the objections of the injured employee, who made it known he no longer wished to enter into the proposed lump sum settlement with the insurer, the administrative judge ordered him to do so. This was error, as was an order of a judge of the Superior Court dismissing the employee's complaint on

jurisdictional grounds, Mass.R.Civ.P. 12(b)(1), 365 Mass. 754 (1974).

*Background.*[1] On May 3, 2006, Michael Opare suffered lower back injuries as a result of having been hit by a forklift during the course of his employment with Bunzl USA (Bunzl), and made a claim for workers' compensation benefits, in accordance with G. L. c. 152 (act). With counsel, Opare and Bunzl's workers' compensation carrier, Sentry Insurance Company (Sentry or insurer), participated in proceedings before the department.[2] In March of 2008, the parties negotiated a lump sum settlement. They submitted the proposed settlement document to an administrative judge for her review and approval pursuant to G. L. c. 152, § 48.

At an initial conference, the administrative judge deferred approving the parties' agreement, citing an error respecting a particular medical expense reflected on the settlement document. The judge requested the parties to correct the same before resubmitting it to her for approval.

In the interim, Opare had misgivings as to entering into the proposed settlement. His change of heart stemmed from the fact that the results of a recent magnetic resonance imaging indicated that his back was "in a worse condition" than he had thought. This led Opare to doubt whether his entering into a lump sum settlement with the insurer was truly in his best interest. Through counsel, Opare notified the insurer and the administrative judge that he no longer wished to enter into the settlement. The insurer objected, and the administrative judge requested the parties to appear before her at a hearing on April 15, 2008.

[1]The facts are drawn from the complaint and the records of the department proceedings reproduced in the record appendix on appeal. For purposes of reviewing the rule 12(b)(1) dismissal order, we accept as true the factual allegations contained in the complaint as well as any favorable inferences reasonably drawn therefrom. *Sullivan* v. *Chief Justice for Admn. & Mgmt. of the Trial Court*, 448 Mass. 15, 20-21 (2006).

[2]Sentry paid Opare temporary total incapacity benefits (G. L. c. 152, § 34) before filing a request with the department in January of 2007 to discontinue benefit payments. Subsequently, a conference order of the department directed Sentry to pay Opare temporary partial benefits (G. L. c. 152, § 35), based on a prescribed earnings and weekly wage rate. Sentry's appeal from the conference order led to Opare being examined by an impartial medical examiner (IME). The IME concluded Opare's injuries (then presented) were not causally related to his May, 2006, workplace accident. Settlement negotiations ultimately ensued.

At that hearing, Opare's counsel offered up the parties' signed settlement document, which was defaced with the word "VOID" handwritten across its face page. Counsel gave a recital of the reasons why his client no longer wished to conclude the settlement with the insurer.

Over Opare's counsel's objection, the administrative judge "approved" the lump sum settlement, binding both Opare and the insurer to its terms. The settlement called for a net lump sum payment of $20,000 to Opare in return for redeeming the insurer's liability for all future weekly benefit payments to him. Opare then filed an action in the Superior Court, alleging the department had infringed his due process rights by binding him to the settlement absent his consent. He sought a declaration that the lump sum settlement was null and void, and requested that his c. 152 claims be "reinstated" to enable him to prosecute the same through the administrative process before the department.

The Superior Court judge, in dismissing Opare's complaint pursuant to Mass.R.Civ.P. 12(b)(1), ruled the court lacked jurisdiction for the reason that Opare had failed to exhaust administrative remedies. We review that conclusion de novo. See *Indeck Maine Energy, LLC* v. *Commissioner of Energy Resources*, 454 Mass. 511, 516 (2009).

*Discussion.* a. *Jurisdiction.* Central to c. 152's statutory scheme is the Legislature's command that the department have oversight responsibility over lump sum settlements in order to ensure that any such settlement is "in the claimant's best interest." G. L. c. 152, § 48, as amended by St. 1991, c. 398. Once the department gives its approval of the parties' lump sum agreement pursuant to § 48, "further inquiry" of the merits of the controversy must be had in Superior Court. *Perkins's Case*, 278 Mass. 294, 299 (1932). See *LaFleur* v. *C.C. Pierce Co.*, 398 Mass. 254, 257 (1986).[3] This settled rule answers the jurisdictional issue here. *O'Reilly's Case*, 258 Mass. 205, 209 (1927).[4]

---

[3]General Laws c. 152, § 19, as amended by St. 1991, c. 398, § 107, clearly provides that a party to any agreement under this chapter, "[e]xcept as provided by G. L. c. 152, § 10B, . . . may file a complaint with the superior court to vacate or modify such agreement on grounds of law or equity." See *Hansen's Case*, 350 Mass. 178, 180 (1966).

[4]In *O'Reilly's Case, supra,* the court held: "After an agreement has been

Abandoning its contrary position advanced before the Superior Court judge,[5] the department now belatedly admits Opare was under no obligation to pursue this dispute further on the administrative stage. It was error for the judge to rule otherwise.

b. *Merits.* The validity of a lump sum agreement concluded under c. 152 requires more than an "offer" and "acceptance" by the signatories. Under § 48, "a lump sum agreement shall not have been perfected until and unless approved" by the department "as being in the claimant's best interest."[6] See *Conlon* v. *Lawrence*, 299 Mass. 528, 532 (1938).

In the present case, there was no "agreement" accepted and consented to by both parties pending before the department's administrative judge at the April 15, 2008, hearing. Given Opare's informed decision not to go forward with the settlement, reached with the advice of counsel, it hardly can be said the lump sum settlement was in his best interest. It is enough to say that Opare had weighed his options and, with the aid of his legal counsel, ultimately decided to pursue his workers' compensation case to a conclusion through the claims procedure available under c. 152. That the administrative judge elected to override Opare's choice and "approve" the agreement was in excess of her authority under c. 152. See *Sterling's Case*, 233 Mass. 485, 489-490 (1919).[7]

approved by the department, and acted upon, any party in interest may and should present that agreement to the Superior Court for a decree of reformation or cancellation, if such a decree would be justified on the facts had the agreement been made in a suit heard and determined in that court."

[5]In a submission to the Superior Court judge, the Attorney General's office, on behalf of the department, argued that Opare had failed to exhaust administrative remedies, a failure that, it said, deprived the trial court of subject matter jurisdiction. The Attorney General now "agrees with Opare that he may seek judicial review of the lump-sum settlement without resorting to further process within the Department." In deciding the jurisdictional issue presented by a rule 12(b)(1) motion, a judge (and reviewing court) may consider documents and other materials outside the pleadings. *Audoire* v. *Clients' Security Bd.*, 450 Mass. 388, 390 n.4 (2008).

[6]This statutory duty is performed by an administrative judge or administrative law judge. G. L. c. 152, § 48. "The determination of a lump sum [settlement] calls for a careful scrutiny of the evidence, the exercise of sound judgment and good practical sense, so that the amount will be as near as possible to the present value of all the compensation payments which the employee would be entitled to receive in the future." *Paltsios's Case*, 329 Mass. 526, 529 (1952). The approval process under § 48 is designed to serve that exacting inquiry.

[7]"[T]he agreement is not approved unless the formal approval be also a

Section 48's requirement of department approval of a lump sum agreement necessarily contemplates a negotiated settlement, to which all parties have willingly and knowingly agreed to be bound, consistent with the stated terms and conditions.[8] That did not come to pass here. Ignoring this fundamental principle, the department argues Opare ought to be barred from pursuing an action in Superior Court because he has not alleged the lump sum settlement was a product of fraud or mutual mistake; while the latter two equitable grounds may form the basis for an aggrieved party's action to nullify or modify an approved § 48 lump sum agreement, the department's contention presupposes the existence of an enforceable settlement "agreement" in the first instance. Its supposition is at odds with Opare's underlying complaint, the factual allegations of which the department expressly accepted as being true, in the context of its rule 12(b)(1) dismissal motion.

It is evident that there was ultimately no "meeting of the minds" between Opare and the insurer. Common sense and logic compel us to conclude, consistent with § 48's plain and unambiguous language, that at the April 15, 2008, hearing, no "agreement" was before the administrative judge to approve "as being in [Opare's] best interest."[9] "When an employee is of full age the department can award a lump sum payment only in unusual cases where the parties agree. The employee and the insurer have the right to determine by contract the disposition to be made of the compensation claim, subject to the approval of the department, and the board cannot compel one of the parties

legal approval and within the jurisdiction conferred on the Industrial Accident board by the act." *Sterling's Case*, 233 Mass. at 490.

[8]To be distinguished is the situation where a minor employee sustained a work-related injury. Under the pre-1985 version of § 48, the department could approve a lump sum agreement without the employee's prior consent. See Nason, Koziol, & Wall, Workers' Compensation § 23.5, at 258 (3d ed. 2003). (We do not decide whether the department can still so act under the current version of § 48.) At the other end of the spectrum, the death of a claimant does not displace the authority of the department to review a lump sum agreement. See *Bertocchi's Case*, 58 Mass. App. Ct. 561, 562-564 (2003); *Donovan's Case*, 58 Mass. App. Ct. 566, 567-570 (2003). See also *Lopes's Case*, 74 Mass. App. Ct. 227, 229 (2009).

[9]This case is unlike the situation in *Ferreira* v. *Arrow Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 633, 635 (1983), where an insurer sought to nullify a settlement after it was signed and presented to a single member of the department who had recommended it for approval after a conference.

without his consent to accept such a lump sum payment." *Osborne's Case*, 257 Mass. 532, 534 (1926).

The same is true here.[10] The administrative judge had no authority to impose a lump sum settlement on an employee who, for good faith reasons related to his then present medical condition, decided, with the advice of counsel, not to settle for a lump sum to be paid by the insurer.[11] Compare *Walsh* v. *Telesector Resources Group, Inc.*, 40 Mass. App. Ct. 227, 233 (1996) ("There is nothing in the statute [§ 15 of c. 152] itself to support the proposition that the Legislature has given a judge the authority to bind parties to settlement terms to which they have not agreed"). To allow such a practice would eviscerate the "beneficent design" behind the act. *Walker's Case*, 453 Mass. 358, 361 (2009). "This is not a time nor an occasion for this court or an administrative board to reverse the fundamental concepts of our work[ers'] compensation act." *Bursey's Case*, 325 Mass. 702, 707 (1950).[12]

The judgment of dismissal is reversed, and the matter is

---

[10]In *Levesque* v. *State Rd. Cement Block Co.*, 21 Mass. Workers' Comp. Rep. 39, 40 (2007), the department's reviewing board considered the ramifications of a claimant's "change of heart" insofar as she had communicated her "desire to litigate," rather than settle her claim. A settlement had already been "tentatively approved" by an administrative judge. *Ibid.* The insurer and employer asked the administrative judge to declare the case settled and approve the agreement. The judge refused, reasoning, "Given the fact that the claimant in this matter has indicated that she is no longer satisfied with the terms of the settlement, I can not therefore in clear conscience enforce the lump sum." *Id.* at 43 n.12. The judge indicated that "[t]he matter will proceed in its normal course." *Id.* at 40. The reviewing board refused to entertain the employer's "interlocutory" appeal of the judge's ruling denying enforcement of the proposed agreement. The judge's reasoning for refusing to enforce the "tentatively approved" lump sum settlement in *Levesque* rings true for the present dispute before us. Here, it is uncontroverted that the administrative judge did not "approve" the proposed lump sum agreement before Opare expressed his unwillingness to settle his claims for reasons related to his medical condition.

[11]This follows from the fact that a claimant and insurer are not in the general marketplace of contractual agreements governed by common-law principles of contract formation, but rather in an intensely regulated system in which the department oversees the best interest of the claimant. See *Conlon* v. *Lawrence*, 299 Mass. at 531-532.

[12]Though not cited by the parties, we are mindful of the rule in *Tewksbury* v. *Fellsway Laundry, Inc.*, 319 Mass. 386, 389 (1946), and *Joseph* v. *Tata*, 339 Mass. 600, 603 (1959): a bargained for written release, executed as part of a settlement of a claim for personal injuries, cannot be avoided on grounds of

remanded to the Superior Court for the entry of a judgment in favor of Opare,[13] declaring that the approved § 48 lump sum settlement is null and void, and ordering that his statutory workers' compensation claims be reinstated before the department so that Opare may seek a resolution through the administrative claims process.[14]

*So ordered.*

---

mistake even if the parties had misapprehended the unknown consequences (stemming from the injury) that arose after the release was signed. That rule is not applicable here because there was ultimately no enforceable "agreement" available for approval by the administrative judge. *Tewksbury* involved a situation where the "consequences" of a given "injury turned out to more serious than expected" by the parties, as opposed to the distinguishable circumstance in *LaFleur* v. *C.C. Pierce Co.*, 398 Mass. at 259, involving "a separate condition" that "existed and yet was unknown to the parties at the time of the [lump sum agreement]." *Ibid.* In *LaFleur, supra* at 260, the Supreme Judicial Court held that a release may be avoided on grounds of mutual mistake, and determined that there was a material issue of fact whether the contracting parties had intended "to release claims for injuries existing but not known to them at the time of the agreement." See *Leblanc* v. *Friedman*, 438 Mass. 592, 596-597 (2003).

[13]Based on our holding, we need not reach Opare's due process claims. The parties' submissions do not offer an explanation why the insurer was not named as a party to the Superior Court action. This issue, if need be, may be addressed by the Superior Court judge, prior to the entry of any final judgment.

[14]It is regrettable the underlying litigation has been unduly time-consuming and (we would expect) not inexpensive to the parties. It cannot be gainsaid that the Attorney General represents the Commonwealth as well as the agency who requests her appearance. The Attorney General "also has a common law duty to represent the public interest." *Secretary of Admn. & Fin.* v. *Attorney Gen.*, 367 Mass. 154, 163 (1975) (Tauro, C.J.). When the situation warrants it, "the Attorney General may refuse to prosecute an appeal where, in [her] judgment, an appeal would not further the interests of the Commonwealth and the public [she] represents." *Ibid.* See *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 401-402 (1994) (Brown, J., concurring). The workers' compensation act was designed by the Legislature in order not "to promote, but to decrease the opportunity for unnecessary litigation." *Nichols's Case*, 217 Mass. 3, 5 (1914). See *Lee* v. *International Data Group*, 55 Mass. App. Ct. 110, 116 (2002). It is difficult to conceive how the government's position in this case has advanced the interests of the Commonwealth and the public.